# KATIE M. THOMPSON *vs.* AUGUSTUS D. CLEMENS, JR.

*Landlord and Tenant—Injury From Defective Premises Which Land-
lord Agreed to Repair—Notice of Defect—Proof of Negligence—
Measure of Damages—Contributory Negligence.*

No action, either in contract or in tort, can be maintained by a tenant or
one of his family against a landlord to recover damages for personal
injuries caused by a defect in the demised premises merely because the
landlord has broken his contract to make necessary repairs to the
premises, since such damages are too remote and are not such as were
contemplated by the parties as the natural result of the breach of the
contract.

When a landlord has agreed to make repairs there is a duty resting upon
him to do so, and for his neglect of that duty the tenant may either sue
on the contract or bring an action on the case in tort, but the measure
of damages is the same in both actions, unless, in the action of tort, it
be shown that there was some act of negligence on the part of the land-
lord beyond the mere breach of the contract.

A landlord who has agreed to make certain designated repairs to the de-
mised premises which are not apparently urgent and who has no reason
to suppose that serious injury would result from his failure to make
them, is not liable to respond in damages for a personal injury sustained
by the tenant or a member of his family in consequence of the failure
to repair.

Defendant rented a house to plaintiff's husband and promised to make
certain repairs to which his attention was called. One of them was a
defect in the north end of the back porch. A week later, when no re-
pairs had been made, plaintiff fell through the floor of the south end of
the porch and was injured. In an action to recover damages on the
ground of defendant's negligence in failing to repair. *Held*, that if the
defendant knew of the defect in the porch that caused the injury to
plaintiff and had reason to believe that it was likely to produce such
injury, then it was negligence on his part not to make the repair
promptly according to his agreement, but since there is no evidence in
the case to show that the defendant was informed or knew from his
own inspection that the condition of the porch was a source of immi-
nent danger, he was not guilty of negligence in failing to have it re-
paired within a week, and consequently the jury was properly instructed
that the plaintiff is not entitled to recover.

When a landlord has neglected to keep the demised premises in repair

according to his contract so that they fall into a dangerous condition, a tenant who with knowledge of the danger chooses to remain and suffers a personal injury from a defect would ordinarily be guilty of contributory negligence and therefore prevented from recovering damages for his injury in an action of tort against the landlord.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*W. Calvin Chestnut* and *Stuart S. Janney* (with whom were *Gans & Haman* on the brief), for the appellant.

The Court placed its decision on the ground of contributory negligence, which it stated was sufficient in law to preclude a recovery. In answer to this the appellant says: 1. The question of contributory negligence was not before the Court. 2. The facts do not show such contributory negligence as would justify the Court in taking the case from the jury. 3. The appellee by his second promise of May 28th, assumed all risk from the condition of the porch.

In the original letting the appellee promised to make needed repairs. When he was later notified by the tenant of the need of repairs, and promised again to make them if the tenant would agree to stay, he assumed the risk of damage due to the condition of the porch. This principle is perhaps more frequently met with in the case of master and servant and defective machinery. If the servant notify the master of a defect in the machinery on which he is at work and the master tells him to continue where he is and he will repair the fault, the master is held to have assumed the risk of the defect. *Hough* v. *Ry. Co.*, 100 U. S. 213; *Cooley*, *"Torts,"* 559. There is no reason why the same principle should not apply to landlord and tenant, where the landlord has assumed the duty to repair, and a recent case has so applied it.

*An action of tort will lie.* It is principally contended by the appellee that this action is founded upon a contract, the contract to repair. He contends that the damages laid are too

remote, and not in contemplation of the parties, and that the only measure of damages for the breach of such a contract is the difference between the rental value of the house in repair and out of repair. This point was urged upon the Court below and was expressly left undecided. Our answer to this contention is, that this action is not in contract but is distinctly in tort. An action on the case founded on the negligent failure of the landlord to perform a duty which he had assumed by the terms of the letting. The fact that that duty has its foundation in contract does not preclude the plaintiff from suing in tort. *Smith* v. *Walsh*, 92 Md. 518.

In many decided cases, the landlord has been held liable to the tenant or his family for injuries due to a neglect to repair when by the terms of the lease that was his duty, and the action of case has been held to be the proper remedy. *Soulay* v. *O'Hare*, 76 Ill. App. 432; *Gridley* v. *Bloomington*, 68 Ill. 47–51; *Stillwell* v. *South Louisville Land Co.*, 52 L. R. A. (Ky.) 325; *Cornish* v. *Ross*, 2 H. Blackstone, 350; *Moore* v. *Stelges*, 69 Fed. Rep. 515; *Perez* v. *Rabaud*, 76 Tex. 191; *Schwandt* v. *Metzger Co.*, 93 Ill. App. 365; *Campbell* v. *Portland Co.*, 62 Me. 558–66. See also where the liability is recognized. *Gorman* v. *Budlong*, 21 R. I. ——; *Suber* v. *Blanc*, 76 Cal. 173; *Frank* v. *Conradi*, 50 N. J. L. 23; *Sinton* v. *Butler*, 40 Ohio State, 158; *Harpel* v. *Fall*, 63 Minn. 520; *Kahn* v. *Love*, 3 Oregon, 206; *Brewster* v. *DeFrenery*, 33 Cal. 341; *Roehrs* v. *Timmons*, 63 N. E. Rep. 481. Our own Courts in addition to the strong dictum in *Smith* v. *Walsh*, supply many analogies. *B. & O. R. Co.* v. *Carr*, 71 Md. 135; *P., W. & B. R. Co.* v. *Constable*, 39 Md. 149, citing *Burnett* v. *Lynch*, 5 B. & C. 589.

Where an action of case was brought by a principal against his broker for failure to demand and receive ready money for certain goods entrusted to him to sell, and the facts showed that it was not the general duty of the broker to exact cash, but was a duty imposed in the particular case by a special contract with his principal, the House of Lords decided that while the duty of the broker arose out of contract, case would lie

for failure to perform it. *Brown* v. *Gorman*, 11 Clark & Fin. 1, 40. This case is cited with approval in *B. & O. R. R. Co.* v. *Carr*, 71 Md. 135–141. See also *Godefray* v. *Jay*, 7 Bing. 413–422.

ʻUpon the authority of the above cited cases, and at the same time fully recognizing the existence of authorities to the contrary in New York, which have been followed to some extent in other States, we confidently assert the true doctrine to be that wherever there is a general relationship, such as landlord and tenant, bailor and bailee, principal and agent, client and professional man, etc., etc., the law raises an obligation on the parties to the relationship to perform the duties which appertain thereto, and for the failure to perform these duties which results in damage, an action of tort will lie.

In the absence of special contract the common law, *i. e.* the established custom of centuries, fixes these duties, but where no principle of public policy is involved, it is perfectly competent for the parties by special contract to restrict, extend or otherwise vary the duties ordinarily appertaining to the relationship. When this is done, the law raises an obligation on the parties to perform those duties so altered or extended, so long as they are strictly relevant to the relationship, to exactly the same extent as in the case of duties implied according to custom, where there is no special contract, and to the same extent an action of tort will lie for a failure to perform. This is true even though an action of *assumpsit* will lie also for the breach of the special agreement. Why should it not be so? Is there any especial majesty annexed to duties imposed by custom making them superior to those imposed by agreement where public policy is not involved? It is the duties of the relationship that the law raises an obligation to perform, and for a failure to perform which it gives an action of tort. It can make no possible difference whether these duties are implied by law in the original agreement creating the relationship, or whether they are fixed by special contract.

The New York cases overlook a very clear distinction and treat a special agreement between landlord and tenant, defining

and limiting their respective duties as though it were a contract between the tenant and some third person. This Court has outlined in advance its position on this question by its decision in *Smith* v. *Walsh*, and its decision in analogous cases cited above.

The right of the tenant's family to recover is co-extensive with that of the tenant himself. *Smith* v. *Walsh*, 92 Md. 518; *Mackenzee* v. *Chellhaus*, 83 Me. 543; *Mehr* v. *McNab*, 24 Ont. Rep. 653; *Bowe* v. *Toring*, 14 Mass. 380.

Notice to the appellee of the particular defect in the porch was sufficient to carry with it notice of the condition of the whole porch, and to give rise to his duty to examine and repair the whole. It would be manifestly absurd to hold that the tenant would have to specify the exact boards which were out of repair. More especially is this apparent when any effort to repair the boards pointed out would have exposed to a carpenter the whole trouble which caused the accident. This identical question was decided, however, in a recent case, where, under similar circumstances, the landlord was held to have notice of the condition of the whole porch. *Rouillon* v. *Wilson*, 29 N. Y. App. Div. 307.

*Richard Bernard* and *Alfred D. Bernard*, for the appellee.

Upon the whole evidence the plaintiff has failed to support either the original or the amended declaration ; the whole case of the plaintiff hinging on a mere matter of opinion of the plaintiff and her husband that if the defendant had kept his promise to repair the two bulged boards, the carpenter might have discovered that the other boards of the porch did not have a sufficient hold on the stringer nailed to the house. While there is not a word of evidence that apart from these two bulged boards, any one knew of the defective condition of the porch. On the contrary the evidence is clear that the defect which caused the accident was unknown to all the parties, *and if the danger was unknown to both landlord and tenant, upon no principle can there be a recovery. Smith* v. *Walsh*, 92 Md. 518.

According to the weight of authority, even where the defect which caused the accident is known to the plaintiff and defendant, and the latter had promised to repair it, the plaintiff can not recover in a case like this. In *McAdam on Landlord and Tenant*, p. 438, it is laid down that "a landlord *who has covenanted to repair* is not liable in tort for personal injuries resulting from the want of repair."

In sec. 330 of *Taylor on Landlord and Tenant*, 8th ed., under the head "Effect of the promise on the part of the landlord to repair," the rule is laid down as follows: "Upon a breach of this covenant, a tenant is entitled to remuneration for all expenditures of money, time and labor in making repairs, and to damages sustained by his losing the use of the premises while they are being placed in the condition in which the landlord should have kept them. But the loss of custom is too speculative and dependent upon too many contingencies to constitute a proper ground for damages.

This statement is copied *verbatim* from *Middlekauf* v. *Smith*, 1 Md. 329, approved in *Cook* v. *England*, 27 Md. 35.

Surely, if the element of lost custom, which loss was proved, was too speculative, remote and uncertain, what can be said of a claim for personal injuries which the jury were to measure by considering the value of the business formerly carried on by the plaintiff in another locality, and the number and ages of her children. "Where a lessor covenants to make repairs and improvements upon the leased property and fails to do so, the lessee is entitled to an action for the breach of the covenant to recover the difference between the rent he agreed to pay and the fair rental value of the property without such repairs. Where the repairs are slight, it has been held that the tenant can make the repairs himself and charge against the rent." *Biggs* v. *McCurley*, 76 Md. 409.

This rule laid down in *Biggs* v. *McCurley*, is recognized in *Cook* v. *Soule*, 56 N. Y. 420; *Hexter* v. *Knox*, 63 N. Y. 561; *Myers* v. *Burns*, 35 N. Y. 269, and in *Wallace's case*, 29 Howard's Pr. Rep. 289.

In *Tuttle* v. *Gilbert*, 145 Mass. 169, the Court assumed that

that there was a contract to repair within a reasonable time, but found that there was no sufficient evidence of deceit or misrepresentation and denied the right of the plaintiff to recover in an action of tort.

In *Smith* v. *Walsh*, *supra*, the Court says quoting from *Robins* v. *Jones*, 15 C. B.: "Fraud apart, there is no law against renting a tumble down house, and the remedy is on the contract, if any." See also, *Arnold* v. *Clark*, 45 N. Y. Superior Court, 252.

In *McGuinn* v. *French*, 107 Wisconsin, 54, there was a porch known to be defective by the landlord and the tenant, which the landlord had promised to replace by a new one at the time of the contract of renting. The Court says: "During all this time the plaintiff used the stairs daily. * * * If these steps were so dangerous as the plaintiff would have us believe, it was little less than foolhardy to have attempted to use them. The tenant, knowing the danger to be great, cannot continue to use the premises and hide behind a promise to repair." The Court held there could be no recovery in tort.

In *Hamilton* v. *Feary*, 8 Indiana Appeals, 615, the landlord agreed to repair a well. The tenant was injured by falling into it. Held there could be no remedy in contract or in tort, the tenant's only remedy was to repair it himself and charge the cost to the landlord.

In *Saunders* v. *Smith*, 5 Delehanty (N. Y. Misc.), 1, it was held there could be no recovery in tort by a tenant for personal injuries resulting from a want of repair, where the promise was made before and after the contract of renting.

In *Town* v. *Armstrong*, 75 Mich. 580, the Court held that a tenant could not recover against his landlord damages for personal injuries caused by falling through a defective stairway, known by both the landlord and tenant to be defective, even where the landlord had frequently promised to repair.

In *Scheck* v. *Fleischhaur*, 26 App. Div. N. Y. 210, the Court held, on demurrer: "The only relation between the parties is that of landlord and tenant. It is well settled that no duty

rests upon the landlord to repair, and there can be no obliga-
tion, except such as may be created by the agreement of the
landlord. Where such agreement has been made, the meas-
ure of damages for the breach is the expense of doing the
work which the landlord agreed to do but did not. It is the
duty of the tenant, if the landlord fails, to do the work him-
self, and recover in an action for that purpose." To the same
effect is *Kabus* v. *Frost*, 50 N. Y. Superior Court, 72, and *Mil-
ler* v. *Rinaldo*, 21 Misc. 470, in which latter case the Court
held that no greater rights arise from a landlord's failure to
repair than if a third party had agreed to make the repairs
and failed to do so, injury resulting therefrom.

BOYD, J., delivered the opinion of the Court.

The appellant sued the appellee for injuries sustained by her
in falling through the floor of a porch attached to a house
rented by her husband from the appellee. The declaration
alleges that the defendant had promised " to keep and main-
tain the premises in good, safe and perfect condition," and
that the porch, on account of its defective condition, known
to the defendant and of which he had been specifically notified,
and which he had in consideration of further payment of rent
promised to repair, but negligently failed to do so, gave way
so that the plaintiff fell through the opening and sustained
serious injuries. At the conclusion of the plaintiff's testimony
the Court granted a prayer that there was no evidence legally
sufficient to entitle the plaintiff to recover under the pleadings.

In the case of *Smith* v. *Walsh*, 92 Md. 518, we had occa-
sion to determine how far a landlord, as a general rule, was
liable to a sub-tenant, and incidentally to a tenant, for injuries
sustained by reason of the defective condition of the property
and we held that the landlord was not responsible, under the
circumstances of that case. From what we there said it can
be seen that a member of a family of the tenant would occupy
no better position, but it is sought to distinguish this case
from that by reason of the fact that there was no contract to
repair in that case, while in this it is claimed there was, and in

considering that question it will be well to at once see what
the record discloses on that subject.   The husband of the
plaintiff testified that he rented the premises on May 21st, 1901,
and paid one month's rent; that before doing so he and the
appellee went through the house and yard ; that he objected
to the fence being down and to some banisters being out of
the front porch; that the appellee said "all is right, but I will
fix the fence for you immediately, next week, and the front
porch, and any necessary repairs I will do."   He remained in
the property during that month, but no repairs were made.
On the 28th of June, he told the appellee he was not going
to stay there as he had not fixed the fence, the door had fallen
off the hinges and the back porch was opening.   They then
went out to the back porch and he showed him " where the
loose place was," and he promised to send a man there the
next morning to fix it and said he would put in a bath tub and
fix the fence the following week.   He then paid the second
month's rent.   The porch where the injury occurred was at
the kitchen door, " was about four or five feet square, and ele-
vated about four and one-half feet from the ground."   It had
a railing on two sides " four or five steps going down to the
yard," and the other side was against the house about ten
inches below the level of the kitchen floor.   The platform con-
sisted of boards about four inches wide, laid from a joist on the
outside to the house, where they were supported under the
weatherboarding by another joist fastened to the house.   He
said that the defect in the porch he pointed out to the appellee
" was a swelling or bulging of two of the boards on the *north
end* of the porch which were loose, and when wet, they would
bulge up and open somewhat near the house and that he told
Mr. Clemens there was danger of some of the children getting
hurt or getting their legs through the opening.   *That the boards
that actually went through with his wife were on the south side of
the porch just opposite the door, and were not the ones that were
loose."*   The appellant testified substantially to the same effect
and added that the appellee said "those boards are dangerous
and I will send a man in the morning to fix it."   On the 5th

of July, she was going into the yard and as she stepped on the platform some of the boards on the *south end* gave way and she went through, causing her serious injury, she being at the time in a delicate condition.

Having thus stated such of the facts as are necessary to show the undertaking of the appellee, we will determine what his responsibility to the appellant was. It is contended for her that he assumed the risk of damages sustained by the tenant, or his family, due to the condition of this porch, while the appellee contends that "a landlord who has covenanted to repair is not liable in tort for personal injuries resulting from the want of repair." The appellant's attorneys, if we understand the position taken by them, concede that such damages are not recoverable in an action *ex contractu*, on the contract to repair, but say this is "an action on the case founded on the negligent failure of the landlord to perform a duty which he had assumed by the terms of the letting. The fact that that duty has its foundation in the contract does not preclude the plaintiff from suing in tort." They contend that this Court has in the case of *Smith* v. *Walsh* impliedly recognized the right of the tenant, or a member of his family, to sue for such injuries, when by the terms of the lease there is a *duty* resting on the landlord to make repairs. In that case we held that the landlord was not liable to the tenant, or the sub-tenant, for personal injuries due to the want of repairs of the property and after quoting from *Taylor on Landlord and Tenant*, sec. 175A, and referring to other authorities, we said "The reason of the rule is perfectly apparent. If the lessee knows the condition of the premises and rents it without requiring the owner to repair it, he takes it as he finds it and has no right to complain of injuries sustained on account of its condition. The owner not being compelled to keep it in repair, if the tenant desires to require that of him, he should so bind him by contract. In the absence of that he must protect himself against dangers which are apparent to him." We were not called upon in that case to determine whether damages for personal injuries could be recovered by the ten-

ant, or any one on the premises under the tenant's right, when
the landlord was under contract to make the repairs, but many
of the decisions we there referred to, and others that might
be cited, in announciug the general rule as to the landlord's
liability to the tenant, do qualify it by referring to the absence
of an agreement on the part of the landlord to repair, and
imply that when there is such an agreement the landlord may
be liable to damages for personal injuries, at least under some
circumstances. In 18 *Ency. of Law* (2 ed.) 216, title Land-
lord and Tenant, it is said, " that in the absence of any agree-
ment on the part of the landlord to repair, a tenant cannot
recover from the landlord the costs of repairs made by him,
nor can the tenant recover from the landlord for injuries to
his property or person, or to the property or person of his
family, caused by the defective condition of the demised prem-
ises," but on page 234 of that volume it is stated that " Dam-
ages for personal injuries to the tenant resulting from the
failure of the landlord to repair are deemed too remote and
consequential, and not in contemplation of the parties, and
therefore not recoverable, though in an Illinois case a recovery
for such injuries has been allowed." The case referred to is
*Sontag* v. *O'Hare*, 73 Ill. App. 432, and the same view has
been adopted in *Schwandt* v. *Metzger Co.*, 93 Ill. App. 365,
and to some extent in *Moore* v. *Steljes*, 69 Fed. Rep. 518;
*Stilwell* v. *S. L. Land Co.*, 52 L. R. A. 325; *Perez* v. *Rabaud*,
76 Texas, 191; *Campbell* v. *Portland Sugar Co.*, 62 Me. 552,
and other cases.

The doctrine stated by the *Encyclopedia of Law* has been
announced in a number of cases cited in note 7 to the above
quotation, and in *McAdam on Landlord and Tenant*, 438, it is
said "a landlord who has covenanted to repair is not liable in
tort for personal injuries resulting from the want of repair,"
citing *Shick* v. *Fleischhaur*, 26 N. Y. App. Div. 210; *Flynn* v.
*Hatton*, 43 How. Pr. 333; *Spellman* v. *Bannigan*, 36 Hun. 174;
*Miller* v. *Rinaldo*, 21 Misc. (N. Y.) 470; *Sanders* v. *Smith*, 5
Misc. (N. Y.) 1; *Tuttle* v. *Gilbert Manufacturing Co.*, 145
Mass. 169. In the note to *Hines* v. *Wilcox*, 34 L. R. A. 824

(96 Tenn. 148), there is a valuable collection of authorities on the " Liability of landlord for injury to tenant from defect in the premises," but it is impossible in an opinion of anything like a reasonable length to undertake to discuss the numerous cases on that subject, and it would be useless to attempt to reconcile the expressions used in many of them. We have no doubt, however, that no action, either in contract or in tort, by a tenant, or one of his family, against a landlord to recover damages for personal injuries should be sustained *merely because* the latter has been guilty of a breach of contract to make necessary repairs in the premises demised. It is not denied by counsel for the appellant that such damages are too remote, and not in contemplation of the parties, to be recovered in an action *ex contractu,* and to permit a recovery for such damages *based on the contract simply because* it is in form an action of tort would be making a distinction that could not be justified by reason or authority. There must be something more than a mere failure on the part of the landlord to make the repairs he has agreed to make. As was said in *B. & O. R. R. Co.* v. *Pumphrey,* 59 Md. 398, " The suit was brought for a wrong, dependent upon a contract, and the first question we have to decide is, what is the true measure of damages in such a case. It makes no difference whether the form of the action is *ex delicto* or *ex contractu,* the real and substantial gravamen of the complaint is the alleged breach of the contract, and in such a case the same law is applicable to both classes of action. In actions like the present, against common carriers, the suit may be framed either *ex contractu,* upon the breach of the engagement, or *ex delicto,* upon the violation of the public duty ; but whether the action be *assumpsit* on the contract, or case for the violation of duty, the measure of damages is equally a question of law, and as much under the control of the Court as if the right rested in agreement merely." And in *B. & O. R. R. Co.* v. *Carr,* 71 Md. 141, relied on by the appellant, the same doctrine was in effect announced. That was a suit for the wrongful refusal of the admission of the appellee to the cars of the appellant. This

Court said: "But this is in form an action of tort. The contract, it is true, entitled the plaintiff to admission to the cars, and gave rise to the duty on the part of the defendant to allow such admission, under proper circumstances ; but, in cases of the class to which this belongs, the refusal or neglect to perform that duty, as well as the negligent performance of it, furnishes a ground of action in tort. In such case, both the nonfeasance and the misfeasance constitute a wrongful act, for which the remedy may be either by action on the contract or in tort, at the option of the party injured." But in passing on the question of damages, we said the rule by which damages are to be estimated is, as a general principle, a question of law to be decided by the Court and "In a case like the present the rule for measuring the damages is fixed and determinate, and should be applied in all cases alike; except in those cases where there may be malice or circumstances of aggravation in the wrong complained of, for which the damages may be enhanced." Without citing other authorities it may be conceded that in this State, when a landlord has agreed to make repairs there is a *duty* resting on him to do so, and upon his failure the tenant may either sue on his contract or bring an action on the case founded in tort for neglect of that duty, but as was said in *Pumphrey's case, supra.* "There are many actions nominally in tort, which, in respect to the measure of relief, are treated as virtually *ex contractu*, and in these cases a fixed rule of damages is adhered to." The familiar cases of *U. S. Telegraph Co.* v. *Gildersleeve*, 29 Md. 232, and *Hadley* v. *Baxendale*, 9 Exch. 341, were cited as furnishing the true measure of damages. So it seems to us that the correct rule in a case such as the one under consideration is that the mere failure of the landlord to make repairs which he had agreed to make cannot make him responsible to the tenant, or a member of his family, for damages for personal injuries sustained by reason of the defective condition of the premises, whether such suit be in *assumpsit* or in case, but in order to recover such damages there must be shown some clear act of negligence or misfeasance on the part of the landlord beyond

the mere breach of contract.  The declaration seems to have adopted that theory as it alleges that the defendant "*had negligently failed*" to repair the porch.   Assuming, as we must as the case is presented, that the appellee had agreed to make all necessary repairs and that this porch was out of repair, and in consequencs of that the appellant was injured, that of course would not be sufficient to hold the appellee responsible for such injuries.   In the first place, it is well settled that as a general rule there must be a notice by the tenant to the landlord of the need of repairs in order to put the latter in default.  18 *Ency. of Law* (2 ed.) 229, where a number of cases are cited, including *Cooke* v. *England*, 27 Md. 14, and after the landlord is notified he has a reasonable time in which to make them, *Ibid*, 230.   As to what is a reasonable time must depend upon circumstances—not only the extent of repairs to be made must be considered, but, what is a much more material question in this case, the apparent necessity for prompt action, and that brings us to what we deem the crucial point in this case, as reflecting upon the question of negligence *vel non* of the appellee, which must determine the right of recovery for the injuries sued for.   If the appellee knew of the defect in this porch that caused the injuries, and had reason to believe that it was likely to produce such results if not repaired, then it was negligence on his part, in view of his agreement to repair, not to do so promptly, or at least to take some steps to protect the tenant and his family from injury.   Of course whether there could be a recovery, on account of the contributory negligence or other default of the party injured, would present another question, which is not now being considered.   But although it is alleged in the first part of the declaration that the defect was "known to the defendant and of which he had specifically been notified theretofore by the plaintiff and her husband," it is subsequently alleged that it was "entirely unknown to the plaintiff and her husband."   If the latter was the fact, it was impossible for either of them to have so notified the defendant, and the testimony, which we have already stated, shows that it was not

known to the plaintiff or her husband, and the only notice they or either of them gave the defendant was as to the condition of the north end of the porch where two of the boards were "bulging." The plaintiff was injured by the boards at the *south end* giving way, and there was probably no reason for the defendant to suppose that any serious injury was likely to result from the two boards which had been called to his attention, and if there was, the injury complained of was in fact not so caused. If the use of that part of the porch was dangerous, the plaintiff knew it, and if she had been injured in the use of that would clearly have been guilty of contributory negligence. But although she and her husband had better opportunity to know the real condition of the porch than the defendant had, as they had been living on the premises for more than a month, she seeks to hold the appellee responsible because he promised to send a carpenter there the day after the two boards were called to his attention (June 28th), but had not done so on July 5th, when the accident happened. It was argued that if the appellee had sent the carpenter there he could have discovered the dangerous condition of the part of the porch that caused the injury. He might or might not, but that is not the test we deem proper to apply in such cases. The question is whether the appellee had reason to believe from the information he received from the plaintiff and her husband, and what he saw himself, that there was such imminent danger in the condition of the porch as to make him responsible for *negligence* in not having it repaired within the week (including a Sunday and a legal holiday) and we think the plaintiff's proof fell far short of establishing that. If there was reason to suppose that the porch was in such a dangerous condition as to call upon the appellee to take immediate action, why did not the plaintiff and her husband know it? If she did know its condition, and notwithstanding such knowledge, used it without any more necessity for doing so than is disclosed by this record, then unquestionably she would have been precluded from recovery, on the ground of contributory negligence. But as she and her husband disclaim

all knowledge of the defect that caused the injury, why should the landlord have imputed to him such knowledge as would justify a Court in declaring him guilty of negligence for not sending a carpenter there at once to repair it ?    It will not do to say that as he had agreed to make necessary repairs and had had the defective condition of the other end of the porch called to his attention, which he had promised to have repaired the next day, a duty rested on him to have it repaired and having violated that duty *therefore* he is responsible.    That would be equivalent to saying that he was liable for such damages as are sought to be recovered in this case simply because he had violated his contract, which we have said was not sufficient. There is no reason for holding landlords to such a harsh rule of law as that.    The tenant has the right to make repairs and charge his landlord with the cost of them, when he is under obligation to keep the premises in repair, and when the expense is as trivial as this would likely have been it is his duty to do so, rather than risk the life or limb of his family.    *Middlekauff* v. *Smith*, 1 Md. 343; *Biggs* v. *McCurley*, 76 Md. 415; *Lawson* v. *Price*, 45 Md. 136 ; *McGinn* v. *French*, 107 Wis. 54. If the landlord is under contract to keep the premises in repair, and although notified of the need of them he fails to make them, if the property cannot be safely occupied, the tenant can ordinarily abandon it.    If with knowledge of such condition he still remains in the property he, and others having such knowledge, would as a general rule be denied the right to recover, on the ground of contributory negligence, even if the landlord was negligent.

So, although we are of opinion that a landlord, under contract to repair, may under some circumstances be liable for damages for personal injuries by reason of a *negligent* failure to make repairs, his *negligence* must be clearly established as the foundation for such liability, and under the facts disclosed by this record there was not such legally sufficient evidence of it as would have justified the Court below in submitting the case to the jury, and therefore without discussing the question of the contributory negligence of the plaintiff, we will affirm the judgment.    *Judgment affirmed, the appellant to pay the costs.*

(Decided January 15th, 1903.)