## ALICE ROBINSON

*vs.*

## MAGGIE HEIL, INFANT, BY HER MOTHER AND NEXT FRIEND, MAGGIE HEIL.

*Agents: authority of—; when a question for jury. Landlord and tenant: repairs; failure to make.*

In general, the extent of an agent's authority, when not conferred by written instrument, is a question of fact for the jury.
p. 650

An action of tort can not be maintained by a tenant against his landlord for personal injuries sustained by the mere breach of his agreement to repair.                    p. 653

But such action will lie for the landlord's negligent failure to make repairs that were agreed upon, where it is shown that injury to the tenant, or to a member of his family, resulted from such negligent failure.                    p. 653

*Decided May 17th, 1916.*

Appeal from the Baltimore City Court.   (STANTON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*William H. Price, Jr.,* and *William C. Coleman* (with a brief by *Semmes, Bowen & Semmes*), for the appellant.

*Ralph Robinson* (with whom was *Isidor Goldstrom* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

The appeal in this case was taken by the defendant from a judgment for one thousand dollars entered against her in the Baltimore City Court in a suit for personal injuries sustained by Maggie Heil, an infant, under the following circumstances: Alice Robinson, the defendant below, and appellant here, at the time of the injuries complained of was the owner of a dwelling house in Baltimore City, situated on North Caroline street. Drayton M. Hite, a real estate dealer, had charge of the house with authority to rent the same and to collect the rents. About the 1st of June, 1914, he rented the house from month to month at a monthly rental of twenty dollars, payable in advance, to Mrs. Maggie Heil, the mother of the infant plaintiff. The entrance to the basement was by means of steps leading from the street, and the usual and customary way of entering the house was by the use of these steps.

In November, 1914, at night, when the plaintiff, who was then twelve years of age, was entering the house by these basement steps, they collapsed and threw her. She was very seriously, and, perhaps permanently injured. The painful and serious nature of her injuries is fully established by the evidence, and was not really disputed. The injury occurred more than five months after the rental of the premises. The facts upon which the plaintiff bases her right to recover, as set out in the declaration, are that at the time Mr. Hite, the agent of the defendant, rented the premises to the mother of the plaintiff:

> "It was expressly agreed and understood between them that all repairs would be made by the landlord and owner of property, and that a certain step leading from the street to said dwelling was specifically mentioned by said Maggie Heil to the agent of the defendant as being one of the repairs which should be made at once; that said agent for the defendant thereupon agreed to fix and repair said steps as well as make other repairs upon said dwelling. and as a result of

said agreement the said Maggie Heil paid the rent to
the said agent of the defendant, and moved into the
premises, and became the tenant of the said Alice
Robinson; that the said steps were out of repair and
were carelessly and negligently permitted to so re-
main by the defendant, although the said defendant
through her agent from time to time promised to fix
and repair them; and as a result of the carelessness
and negligence of the defendant in permitting the
said steps to remain in a dangerous condition, although
she had full knowledge of the defective and dangerous
condition of said steps prior to the rental of the said
dwelling to the plaintiff's mother, and although she
was from time to time notified of the defective and
dangerous condition of said steps by the tenant, Mag-
gie Heil, she permitted them to remain in such a dan-
gerous and defective condition that, on or about the
26th day of November of the year 1914, Maggie Heil,
the infant daughter of Maggie Heil, the occupant of
said dwelling, while exercising due and proper care
and caution, while walking upon said steps for the
purpose of entering the home of her mother, was, by
reason of the caving in and collapsing of said steps,
due to their defective and dangerous condition, pre-
cipitated to the ground with great force and violence,
and sustained serious, painful and permanent bodily
hurt in and about her head, arms and back, and more
particularly about her leg, knee, ankle and foot, and
she suffered great mental pain and anguish, and is
otherwise injured and damaged.

"And the plaintiff says that the injuries aforesaid
were caused solely by the carelessness and negligence
of the defendant in renting premises which she knew
to be in a defective and dangerous condition at the
time of the rental, and in maintaining and continuing
the said defective and dangerous condition of the steps
complained of, contrary to her agreement through her
agent both at the time of the rental and subsequent
thereto to keep premises in good condition, and make

necessary repairs, and more specifically to repair steps mentioned herein; and the plaintiff says she in no way directly contributed to the result."

There can be no doubt that these steps were in bad condition both before and after the time the house was rented to Mrs. Heil. The prior tenant, Mrs. Levin, had called the attention of Mr. Hite to their bad condition. It is undisputed that prior to the time the property was rented to Mrs. Heil she called the attention of Mr. Hite to the condition of the steps, and told him she would not take the house unless he would make the repairs, and her daughter, Mrs. Tarleton, testified that on three occasions after her mother had moved into the house she talked to Mr. Hite about the condition of the steps. It was admitted that Drayton M. Hite was the agent of the defendant, clothed with all the authority generally exercised by real estate agents. That he had no *special* instructions from the defendant. That it was his custom to account to her for the rent, and that he would deduct from the rent any repairs which he may have placed upon the property. Mrs. Heil testified to four distinct repairs that she required to be made as a condition of her renting the property, viz: the papering of two rooms on the second floor; the repair of the sink in the kitchen; the repair of the yard fence; and the repair of the basement steps. She said that Mr. Hite did paper the two rooms and fix the sink, but wholly neglected to repair the steps or the yard fence.

The Court admitted, subject to exception, the testimony of Mrs. Heil that Mr. Hite promised before she rented the house that he would make these repairs—that she told him the steps looked like they were in bad condition, and that he said, "if they are not broken down, they will not hurt anybody, but I will fix them, and I will have everything repaired and fixed in the house for you and you can move in," and that she did move in with that understanding—that he promised to fix everything and put everything in good condition.

Mrs. Tarleton testified, subject to exception, that she paid the rent to Mr. Hite and told him that the steps should be fixed, and that he said: "Are they falling down?", and I said, "No, sir." He said, "Very well, you can walk on them and I will send a man down there and fix them."

The Court overruled motions to strike out the testimony of Mrs. Heil and Mrs. Tarleton as to any promise or agreement made by Mr. Hite to make repairs, and these rulings constitute the first and second exceptions.

It is important to know the exact condition of the steps, and the knowledge of this condition possessed by Mrs. Heil and the plaintiff before the injury. The plaintiff testified that before the injury no one had ever spoken to her about the steps. After they had collapsed it was found that the support on the side of the wall was completely rotten, and that as the child put her foot upon the third step it gave away and threw her. Mrs. Heil, who is a widow, testified that she had noticed the condition of the steps before she moved in, but did not know they were rotten; that they looked like they were a little worn; that she did not know their condition was so bad as disclosed after they had fallen. She said: "The steps looked like they needed fixing. They did not look like they were worn out in that way, but they needed fixing, and I explained to him (Mr. Hite) that there might be an accident with them. He said that as long as they were not tumbling down they were all right and he would fix them." She further testified: "I told him that those steps looked like they needed fixing and I would like him to have them fixed first of all. He said, 'They are not tumbling down, are they?' And I said, 'No, sir; they are not tumbling down.' And he said, 'then you can walk on them.' I did not think any more about it. I thought if they are that safe then there is nothing more to do, we can walk on them, and that is why we walked on them. We had to use them. They were the only entrance."

Upon the facts stated we think the Court committed no error in its rulings embraced in the first and second excep-

tions. The agency of Drayton M. Hite was admitted and he had in fact made some repairs to the property, and it was further admitted that it was his custom to account to the defendant for the rent collected and deduct from the rent the cost of any repairs made. The character and extent of the repairs mentioned were such as were reasonably necessary to put the property in a safe and tenantable condition. The general rule is, established by many cases in this Court, that the extent of the agent's authority, when, as here, the authority is not conferred by a written instrument, is a question of fact for the jury. *Consolidated Railway Co.* v. *Pierce,* 89 Md. 495; *Groscup* v. *Downey,* 105 Md. 273; *Brager* v. *Levy,* 122 Md. 554.

In the last cited case the Court quoted and approved the following statement of the law from 31 *Cyc.* 1331: "While as between the principal and the agent, the scope of the latter's authority, is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof; and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person who, in order to avail himself of his rights thereunder, must have dealt with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence, in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing such business, although he may have acted in

violation of private instructions, for such acts are within the apparent scope of his authority. An agent can not, however, enlarge the actual authority by his own acts without some measure of assent or acquiescence on the part of his principal, whose rights and liabilities as to third persons are not affected by any apparent authority which his agent has conferred upon himself simply by his own representations express or implied. Although these rules are firmly established, their application to a particular case is extremely difficult. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had under the circumstances conferred upon his agent."

Applying these principles to the facts and circumstances of the case we are of opinion that the Court properly admitted the evidence of the agreement or promise of Mr. Hite, the defendant's agent, to make the repairs. Drayton M. Hite testified that the property was in his charge, and that he had rented it to Mrs. Heil about June 1, 1914, and that she occupied it for five or six months. He did not deny that he was informed of the bad condition of the steps. He gave the following testimony as to his alleged agreement to repair, and as to his authority to do so: "Q. Do you recollect when she first came to your office to rent the property? A. I do. Q. Did you have a written lease? A. No. Q. Did you make any agreement with her in reference to repairs or anything like that? A. I did not. Q. In the management of this property as a rule, do you have the property repaired? A. Some I do and some I do not. Q. In this particular property, did you have it kept in order to a certain extent? A. After conference with the owner, subject to her orders and instructions. Q. At the time that you made this agreement of rent, had you any instructions from Mrs. Robinson with regard to repairs on that property? A. A short time prior to this accident I had some———. Q. I

mean at the time you rented it to this woman? A. No, sir. Q. At the time that you made this agreement of rent, had you any instructions from Mrs. Robinson with regard to the repairs on that property? A. I had not." This testimony is not a very satisfactory denial of his authority to make repairs at any time during Mrs. Heil's occupation of the house. Indeed, it is somewhat equivocal, and the defendant, who was called as a witness, merely testified that she was the owner of the house and that Mr. Hite had charge of it. She did not deny knowledge of the bad condition of the steps, or that her agent had authority to repair them.

At the conclusion of the whole evidence, the Court granted two prayers on behalf of the plaintiff. The second prayer was on the measure of damages, and was not excepted to. The first prayer under which all the important questions in the case may be considered, is as follows: "If the jury shall find from the evidence that one D. M. Hite was the agent of the defendant, Alice Robinson in charge of the premises known as No. 1011 N. Caroline street, and that on or about the 25th day of May, 1914, he rented the said premises to one Maggie Heil and that at the time of said rental he promised and agreed to repair a certain stairway leading from the sidewalk into the basement of the said house and that he knew that the said stairway was in a dangerous and defective condition, and that the said Maggie Heil was induced to rent the said premises by reason of the promise of the said agent to repair the said stairway, and that the said agent permitted the said stairway to remain in a defective and dangerous condition, and that subsequently on or about the 26th day of November, 1914, the plaintiff, Maggie Heil, infant daughter of said tenant, Maggie Heil, while descending the said steps and in the exercise of such care and prudence on her part as ought, under all the circumstances to have been reasonably expected from one of her age and intelligence, and without knowledge of their dangerous condition, if the jury shall so find, was thrown to the bottom by the giving away of one of the steps of said stairway and because of its

defective condition, and that the said Maggie Heil the infant plaintiff sustained injury in consequence of said fall, then she is entitled to recover in this action, provided the jury shall also find that the defendant, Alice Robinson, or her agent, D. M. Hite, had reason to believe from information received, or from their own knowledge, or either of them, that there was danger of injury to persons in permitting the steps to remain in said defective and dangerous condition (if the jury shall so find) ; and provided further the jury shall find that in promising to make the repairs to the said stairway (if they shall so find) 'the said D. M. Hite was acting within the scope of his employment (if they shall so find) by the said Alice Robinson, with respect to the property 1011 N. Caroline street; and that the accident did not result from the want of ordinary care and prudence on the part of the mother, directly contributing thereto." The defendant filed a general exception to the granting of this. prayer and also a special exception upon the ground that there was no evidence legally sufficient to show that Mr. Hite, as agent for the defendant, had any authority to 'make repairs. The action of the Court in overruling this exception constituted the third bill of exceptions.

There is much diversity of opinions in other jurisdictions upon the question as to the right of the tenant or a member of his family to maintain an action of tort upon the landlord's agreement to repair. But in this State it is settled, *first,* that an action of tort can not be maintained by a tenant against his landlord for personal injuries sustained by reason of his landlord's mere failure or mere breach of his agreement to repair. But that such an action will lie for the *negligent* failure of the landlord to make the repairs agreed upon where it is shown that injury to the tenant has resulted from *such failure;* and *secondly,* that the liability of the landlord to a member of the tenant's family for personal injuries resulting from *such negligent failure* to repair is practically the same as to the tenant himself. These propositions are fully established by the cases of *Thompson* v.

*Clemens,* 96 Md. 196, and *Pinkerton* v. *Slocomb,* 126 Md. 665, wherein the whole question of the landlord's liability in such cases was fully considered, and we think, under the principles there stated, the testimony offered by the plaintiff was amply sufficient to have taken the case to the jury upon the questions as to the agreement to repair and as to the negligent failure to perform the agreement. The evidence we have referred to was legally sufficient to show a clear act of negligence on the part of the landlord *beyond* the mere breach of the contract to repair.

The Court submitted the question of ordinary care on the part of the plaintiff and her mother to the finding of the jury. The plaintiff was twelve years old at the time of the accident which happened in the night. The degree of care required of her and her mother is stated as follows in *Baltimore City Passenger Railway Co.* v. *McDonnell,* 43 Md. 534: "Whatever may have been the decisions elsewhere, in this State it is now well settled law, that if an injury results directly from the want of ordinary care and prudence, on the part of the defendant or its agents, and not from the want of such care and prudence on the part of the plaintiff as ought, under all the circumsances, to have been expected from one of his age and intelligence, or from want of ordinary care and prudence on the part of his parents, directly contributing to the accident, the plaintiff is entitled to recover. This Court has also distinctly recognized the rule that a child, so far as he is personally concerned, is to be held only to such degree of care, as ought to be reasonably expected from children of his age and intelligence." To the same effect is the case of *United Railway Co.* v. *Carneal,* 110 Md. 211, wherein it is said that: "Courts are cautious not to invade the province of the jury, and, although the question of negligence may become a matter of law the circumstances of the case must be clear and decisive to jusify a withdrawal of the case from the consideration of the jury."

But it is contended that the Court should have withdrawn the case from the jury upon the ground of contributory neg-

ligence both on the part of the plaintiff and her mother. We have already adverted to the appearance of the steps before the accident, and to the extent of Mrs. Heil's knowledge of their condition, and what took place between her and Mr. Hite with respect to them. This evidence is not sufficient to have justified the Court in declaring either the plaintiff or her mother to have been guilty of contributory negligence, and that question was properly left to the jury. There was evidence legally sufficient to support the hypotheses of the plaintiff's first prayer, which correctly declared the law applicable to the facts, and submitted the whole case fairly to the jury. The Court, therefore, committed no error in overruling the general and special exception to it and in granting the prayer.

The Court granted the defendant's fourth and sixth prayers. Her first, A., second and fifth prayers sought to withdraw the case from the jury upon the ground, *first,* that there was no legally sufficient evidence to entitle the plaintiff to recover; *secondly,* because of contributory negligence of the plaintiff and her mother; *thirdly,* because the undisputed evidence showed that Mr. Hite had no authority to bind the defendant by a contract to repair; and *fourthly,* because the plaintiff and her mother were guilty of contributory negligence.

From what we have already said, it will appear that these prayers were properly refused. The defendant's third prayer did not correctly state the law of this State applicable to a suit of this character, and the Court was right in rejecting it.

We find no error of law in any of the rulings of the trial Court, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*