## BENJAMIN A. KING *v.* OCIE COMPTON

[No. 33, October Term, 1946.]

*Decided December 12, 1946.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Eugene P. Childs* appeared on the brief for the appellant.

*George B. Woelfel* appeared on the brief for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This is an appeal from a judgment of $450 in favor of the appellee (plaintiff) in the Circuit Court for Anne Arundel County for personal injuries sustained as a result of a fall at the entrance to premises rented by the

appellant to the appellee's husband. The case was tried before the court and a jury. The chief question presented is whether the court erred in refusing the appellant's prayer for a directed verdict (on which the court reserved decision) and in denying the appellant's motion for judgment *n. o. v.*, on the ground of a failure to establish primary negligence.

The premises in question were rented to the appellee's husband, Donald Compton, on or about January 1, 1943, for $15 per month, and occupied by Compton, his wife, and three children and his sister-in-law. Apparently there is, or was, a fruit stand on the ground floor in the front of the building. The only entrance to the demised premises, comprising the whole second floor, is at the rear of the building, where the ground rises and there is a ramp alongside the rear wall, leading to an open wooden platform that gives access to the entrance floor. This platform is about three feet from the ground. It appears that this second floor was at one time used as a vegetable loft. The ramp and platform were installed so that vegetables could be moved to and from the loft by wheelbarrow. On December 26, 1945, while leaving the premises, the appellee fell from the ramp and broke her leg.

Donald Compton testified that at the time he rented the premises from the appellant, nothing was said by either party about repairs. On September 1, 1945, he asked King about repairing the "porch" and "showed him where [it was] pulling loose from the house." King said he would "bring some concrete block down and block it up," that "it would be all right [to use] until he got it fixed." King did not repair the porch until some time after the accident. The place where his wife fell was "right on the step where you step off the porch, the step gave way from underneath and she went down." The platform did not fall away from the house. There is just one step from the platform down to the ramp, which is "slanting from the porch to the ground and it is on a big block." He did not see his wife fall; he was inside the premises at the time.

Ocie Compton testified that the accident happened when she "stepped off of the step and it just broke and threw me out in the yard." The step "looked like it rotted down." The stringer underneath broke loose and let the ramp down. The platform did not break, it was the ramp from the platform to the ground that gave way. The platform and ramp were wet but not covered with ice, although the ground was "icy." She knew that the platform was loose from the house but "the step I thought was all right." She "stepped off the platform down on the ramp when something gave way." Her husband and another man carried her up the ramp into the house. She further testified that she spoke to King on December 1, when he came for the rent. She told him: "If you don't fix that porch I am afraid it is going to fall and hurt somebody." He said: "I think it will be all right, I will be down in a few days and fix it." She did not call his attention to the ramp.

The appellant denied ever making any promise to repair the premises. He admitted, however, that in November, 1945, Compton spoke to him about the platform, and King told him he could not see where it needed any repair work, but that he would furnish Compton with some cinder block, if he (Compton) wanted to renew the understructure; that Compton was a good mechanic and agreed with him that cinder block would be a suitable material; that he would come and get the block; that Mrs. Compton said "some day, somebody is going to break a leg on that platform." He denied that the ramp was broken or out of place after the accident. His testimony on this point was corroborated by two other witnesses, who attributed the accident to the fact that the ramp was slippery.

The cause of action in this case is based upon the theory that a landlord, after notice and a promise on his part to repair, negligently failed to perform his promise. *Edelman v. Monouydas*, 186 Md. 479, 47 A. 2d 41; *Restatement, Torts*, Sec. 357. For the purpose of the demurrer prayer it must be assumed, although he denies

it, that King promised to repair the platform. But the evidence in the case at bar is undisputed that the injury was not caused by a failure to repair the platform; on the contrary, the injury was caused either by a hidden defect in the ramp, which was unknown to any of the parties, or by slipping on the ramp.

In the case of *Thompson v. Clemens,* 96 Md. 196, 53 A. 919, 60 L. R. A. 580, the plaintiff was injured by falling through a porch when the boards at the south end gave way. The only notice the plaintiff or her husband gave to the landlord was as to the condition of the north end of the porch, where two of the boards were "bulging." It was held that the evidence was legally insufficient to establish negligence on the part of the landlord. In *Pinkerton v. Slocomb,* 126 Md. 665, 95 A. 965, it was held that the case was improperly submitted to the jury, where it was shown that the injury was caused by a defect in a step, which defect was unknown to the landlord. On the other hand, in *Robinson v. Heil,* 128 Md. 645, 98 A. 195, where the condition of steps, which collapsed, was previously called to the attention of the landlord, and there was a promise to repair, the case was allowed to go to the jury. And in *Edelman v. Monouydas, supra,* where the injury was caused by the breaking of a windowcord which the landlord had promised to repair, we held that the case was properly submitted to the jury. Compare *Sezzin v. Stark,* 187 Md. 241, 49 A. 2d 742, where the landlord, with knowledge of an unsafe condition, permitted the tenant of an apartment to use a ventilator shaft for household purposes in common with other tenants, without warning her of the hidden danger. These cases clearly illustrate the line of distinction. Upon the record before us we think there was a complete failure of proof to connect the injury with the failure to repair the platform. None of the witnesses in the case testified that they were aware of any defect in the ramp prior to the accident or that the landlord ever promised to repair it. It is admitted that he was under no general contractual duty to repair.

If the testimony of the plaintiff and her husband is accepted as true, the injury was caused by a hidden defect in the ramp, which they thought was "all right" and not by the disclosed defect in the platform "pulling loose from the house."

Since we are of the opinion that the case should have been withdrawn from the jury, we shall not discuss the points raised by the appellant as to the admissibility of photographs, or the alleged errors in the court's charge to the jury.

*Judgment reversed, with costs.*