## ROSS *v.* BELZER

[No. 80, October Term, 1951.]

*Decided January 16, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*J. Gilbert Prendergast,* with whom were *Clark, Thomsen & Smith* on the brief, for appellant.

*I. Duke Avnet,* with whom were *Avnet & Avnet* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a suit brought in the Superior Court of Baltimore City by the appellee, who was a tenant in an apartment house at 4003 Bonner Road in Baltimore City, owned by the appellant. The suit is for damages for an accident happening on the common steps leading from the outside door of the apartment house to the first floor where the appellee's apartment was located. This accident happened between 11 and 11:30 P. M. on August 3, 1950, when the appellee was returning to her apartment. She caught her foot on or under the rubber matting which was on these steps, and fell backward, breaking her hip. She claims that her landlord was negligent in two respects, namely, that the matting was either not in proper condition, or not properly fastened, and that the visibility of the bottom step was very bad.

At the conclusion of the case, the appellant made a motion for a directed verdict on the ground of lack of legally sufficient evidence of primary negligence, and on the ground that as a matter of law the appellee was guilty of negligence directly contributing to the accident. These motions were refused, and the case went to the jury, which returned a verdict in favor of the plaintiff. Thereupon the appellant filed a motion for a judgment N.O.V. This was overruled and judgment entered on the verdict, from which the appeal was taken here.

In *Sezzin v. Stark*, 187 Md. 241, 250, 49 A. 2d 742, 746, we approved the statement in Restatement of Torts, Negligence, Sec. 360, "Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use", to the effect that a lessor is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe. We also quoted in that case

from some New Jersey cases to the effect that this departure from the general rule "has been necessitated by the construction of tenement or apartment houses, intended for the habitation of many tenants," and "* * * the courts have found it necessary to recognize the novel housing requisite incident to modern life, by treating hallways and stairs as common ways or appurtenances * * * for a failure to reasonably maintain which, in the event of damage to occupants and others lawfully using the premises, the landlord has by the general trend of authority been made liable." The same question is fully discussed and the same conclusion reached by the United States Court of Appeals for the Fourth Circuit in the case of *State, Use of Pumphrey v. Manor Real Estate & Trust Co.*, 176 F. 2d 414, 417. This case involved an apartment house in Baltimore, and the Maryland law was applied in an opinion written by Judge Soper, a distinguished Maryland lawyer and state judge before he went upon the Federal bench. In that case, the court noted that under the law of Maryland, the general doctrine is that there is no implied covenant requiring the landlord to make repairs, and no implied warranty that a house shall be fit for habitation, but the landlord's obligation is different in the case of multiple unit dwellings, "for" (quoting from a Maryland case) "where he leases separate portions of the same building to different tenants, and reserves under his control the halls, stairways, and other portions of the building used in common by all of the tenants as means of access to their respective rooms or apartments, he is under an obligation to use reasonable diligence to keep the portions so retained under his control of the building in a safe condition and free from improper obstructions." *Whitman v. Mason*, 102 Md. 275, 282, 62 A. 749, 751, 4 L. R. A.; N. S., 565.

It is the general rule that the particular condition which caused the injury must have been made known to the property owner a reasonable time before the accident occurred so that he might have an opportunity to

correct it. This is illustrated by a number of cases. In *Thompson v. Clemens,* 96 Md. 196, 53 A. 919, 60 L. R. A. 580, the plaintiff was injured by falling through a porch where some boards at the *south* end had given way. The only notice the landlord had was that some boards at the *north* end of the porch were bulging. This was held legally insufficient to establish negligence on the part of the landlord. In *Robinson v. Heil,* 128 Md. 645, 98 A. 195, the condition of steps had been previously called to the attention of the landlord, and he had promised to repair them. These steps collapsed and caused the injury, and the evidence was held sufficient to go to the jury. In *King v. Compton,* 187 Md. 363, 50 A. 2d 131, the landlord had been notified of a defect in a platform which gave access to the entrance door. The accident occurred, however, because of a hidden defect in the ramp, and not by the disclosed defect in the platform, and we held that there was not sufficient evidence to take the case to the jury.

The plaintiff-appellee in this case testified: "And the light comes down there, it throws quite a shadow. There is very little than you can see. Well, anyhow, I started to go up the steps to go into my apartment. I put my right foot on the first step and then I put up my left foot to go up on the second step. When I went to lift my right foot up again to step up on the next step, it got caught in the rubber mat that is curled up there all the time on the step and I fell right back against the door." She said on cross-examination that she "could just about see to try to get up the steps." Each step on the flight of six was 7¾ inches high. The stairs were 5 feet 3 inches wide without railings. There was only one light, and that hung over the top landing, but somewhat to the left of anyone ascending. This light was 13 feet 2 inches from the outside door diagonally. There was testimony that it consisted of a 15 watt bulb which was described as dirty, corroded and weak, although this was contradicted. There was also testimony that an overhanging staircase, combined with the dark paint and dirty condition of the walls, cast shadows and

made the light very dim at the first two steps. Each of the steps had a rubber matting secured at the front by a metal rod, leaving the sides and the back unsecured and loose. This matting was fifteen years old, but there is no evidence that it was in any way defective or broken or curled at the sides before the accident. Between the side end of the matting and the wainscoating alongside was a space 6⅝ inches wide.

About two weeks before the accident, Mrs. Dubois, who was the daughter of Mrs. Belzer, the appellee, testified that she spoke to the appellant about the matting in the hall, that it was in a dangerous condition, and that something should be done about it. She said the answer of the appellant was that there was nothing wrong with anything in the hall, and the witness did not have to stay there. It does not appear just why the witness thought that the matting was dangerous or what was wrong with it. There is also testimony that on a number of occasions, Mrs. Dubois had called the attention of the landlord to the lighting. At times she put a brighter bulb in, and then when the landlord came and found it, he would take out her bulb and return it to her and put back a 15 watt bulb. She said she had spoken to him about this situation at least half a dozen times, and his reply was always: "Well,' you don't have to live here. You can move."

There is testimony to the effect that the right end of the matting on the first step where the appellee hooked her foot was curled up *after* the accident. This was apparently the result of her catching her foot in it, but in the absence of any evidence that it was curled up, or otherwise disarranged *before* the accident, the most that can be said of the relation of the matting to the accident is that Mrs. Belzer caught her foot or her heel under the edge where it was not fastened to the step. The uncontradicted testimony is that the placing of rubber mats on the treads of steps is a safe method which is often employed to safeguard against ordinary wear and tear. Mrs. Belzer had complained to the landlord at least twice about a year before her

fall, and again about six months before, but this complaint had to do with the poor lighting. She told him that a stronger bulb was needed so people would not stumble in going up and down. His answer, she testified, was always the same: "Move." The situation in the hall had existed during the entire period of more than eleven years while the appellee lived in the apartment. She admitted in her testimony that the bottom step was not completely dark, that she could see it, and that the condition that existed there on the night of August 3rd was the same as it had been all along. Under these circumstances, it is difficult to find how the accident was caused by the lack of a brighter light,and there does not seem to be any evidence that any bad condition of the rubber matting was responsible for the fall. We are unable to find from the evidence that there was any unsafe condition. The fact that the matting was not nailed down at the side and in the rear, did not apparently render it unsafe for fifteen years, and it is not shown in any way that it was in a different condition before the accident. The notice given to the landlord about it did not indicate anything specifically wrong with it, and did not, so far as the evidence shows, refer to any defect in that part of it which was on the first step. Of course, if the appellee did not look where she was going, and allowed part of her foot to get under the matting so that she tripped, that cannot be attributed to the negligence of the landlord, nor can we find that the lighting conditions, while perhaps not as good as they might have been, caused the appellee to get her foot under the matting. It was not so dark that she could not see it, and the landlord was not obliged to provide floodlights. All he was obligated to do was to provide a hallway which was in reasonably safe condition for ingress and egress, and we cannot find in the evidence that he failed in his duty. Under these circumstances, the judgment will have to be reversed.

*Judgment reversed with costs without a new trial.*