### POLLACK v. PERRY.   (No. 8152.)

(Court of Civil Appeals of Texas. Dallas. Nov. 29, 1919.   Rehearing Denied Jan. 10, 1920.)

1. LANDLORD AND TENANT ⟜150(1)—WITHOUT COVENANT LANDLORD IS NOT OBLIGED TO REPAIR.

In the absence of a covenant to that effect, the landlord is under no obligation to repair the premises, even when they become defective through decay or deterioration.

2. LANDLORD AND TENANT ⟜164(2)—LANDLORD MAY BE LIABLE IN TORT FOR FAILURE TO REPAIR AS AGREED.

Where the landlord agrees to repair the premises, liability for personal injuries to the tenant, resulting from failure to repair, may arise on theory of negligence.

3. LANDLORD AND TENANT ⟜152(3)—COVENANT TO REPAIR FOR TENANT BY MONTH PRESUMED TO CONTINUE FOR SUCCEEDING MONTHS.

The covenant of a landlord to make repairs on premises leased from month to month is presumed to continue as a covenant for the months after the first, where the tenant is permitted to remain in possession on paying the stipulated rent without a new agreement.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. LANDLORD AND TENANT ☞164(2)—LANDLORD NOT LIABLE FOR INJURIES RESULTING FROM BREACH OF COVENANT TO REPAIR, EXCEPT WHERE HE CONCEALS A LATENT DEFECT, OR LEASES THE PROPERTY FOR PUBLIC USE.**

A landlord is not liable to his tenant for personal injuries resulting from a breach of covenant to repair, except where he conceals a latent defect and is guilty of fraud, or leases the property for public use.

**5. LANDLORD AND TENANT ☞164(3)—LANDLORD IS LIABLE FOR NEGLIGENT FAILURE OF HIS EMPLOYÉ TO REPLACE DEFECTIVE FLOOR PLANK.**

A landlord who agreed to repair floor of rented premises is liable for the negligent failure of his employé to replace a defective plank in the floor, whereby injury resulted to the tenant.

**6. LANDLORD AND TENANT ☞164(6)—LANDLORD CHARGED WITH KNOWLEDGE OF DEFECTS OF WHICH HIS EMPLOYÉ TO MAKE REPAIRS KNEW.**

A landlord who employed a carpenter to repair a defective floor is chargeable with knowledge of the defect in the floor of which the carpenter had knowledge.

**7. LANDLORD AND TENANT ☞169(6) — EVIDENCE HELD TO WARRANT FINDING THAT LANDLORD'S SERVANT HAD KNOWLEDGE OF DEFECT.**

Evidence that landlord's employé had opportunity to ascertain the defective condition of a plank, and that it was in the same condition then as when it broke under plaintiff, *held* sufficient to warrant the jury in finding that the servant had knowledge of the defective condition of the plank, so that it was negligence not to repair it.

**8. LANDLORD AND TENANT ☞169(11)—EVIDENCE HELD NOT TO SHOW TENANT'S CONTRIBUTORY NEGLIGENCE AS A MATTER OF LAW.**

Evidence that a tenant knew that the floor under linoleum was bending at a certain spot, *held* not to establish contributory negligence as a matter of law which precludes recovery for injuries resulting from the breaking of the plank in that spot.

**9. LANDLORD AND TENANT ☞169(11)—QUESTION OF TENANT'S CONTRIBUTORY NEGLIGENCE IS ORDINARILY FOR JURY.**

Ordinarily the question whether a tenant was contributorily negligent is a question of fact for the jury.

**10. TRIAL ☞139(1) — CIRCUMSTANCES MUST BE DECISIVE TO JUSTIFY THE WITHDRAWAL OF CASE FROM JURY.**

The circumstances of the case must be clear and decisive to justify its withdrawal from the consideration of the jury.

**11. LANDLORD AND TENANT ☞169(6)—EVIDENCE HELD NOT TO SHOW CONCEALMENT OF DEFECT BY LANDLORD.**

Evidence that a defective flooring was concealed by linoleum, which tenant requested to have left on the floor, *held* not to establish

that the landlord intentionally concealed the defective floor.

**12. APPEAL AND ERROR ☞1062(5)—ERROR IN SUBMITTING IMMATERIAL ISSUE HARMLESS.**

Assignments of error to the submission of special issues will be overruled where the issues were immaterial and harmless.

**13. APPEAL AND ERROR ☞1062(1)—ISSUE ASSUMING FACT CONCLUSIVELY PROVED HARMLESS.**

A special issue, assuming that the jury would find the floor unsafe and dangerous, does not require reversal, where the evidence conclusively showed that fact.

**14. TRIAL ☞352(5)—ISSUE HELD NOT ERRONEOUS AS MISLEADING THE JURY IN ANSWERING ANOTHER ISSUE.**

An issue whether plaintiff discovered that the floor was as unsafe as the jury found it is not erroneous as misleading the jury to believe that plaintiff was not contributorily negligent unless she discovered the floor was as unsafe as they found it.

**15. APPEAL AND ERROR ☞1070(2)—FAILURE TO SET ASIDE FINDING UNSUPPORTED BY EVIDENCE, HARMLESS WHERE OTHER FINDINGS SUPPORTED THE JUDGMENT.**

Failure of the court to set aside a finding that defendant concealed the defect from plaintiff, which was unsupported by evidence, is harmless where other supported findings warranted recovery by plaintiff.

**16. DAMAGES ☞132(4)—$3,750 HELD NOT EXCESSIVE FOR INTERNAL INJURIES CURABLE ONLY BY MAJOR OPERATION.**

$3,750 damages for injuries to a woman's internal organs which inflicted continuing pain, and which would be permanent unless relieved by a major operation involving more or less danger, are not excessive.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by Mrs. Mary Perry against Henry Pollack. Judgment for the plaintiff, and defendant appeals. Affirmed.

Harry P. Lawther, of Dallas, for appellant.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellee.

TALBOT, J. The appellee sued the appellant to recover damages in the sum of $5,000 for personal injuries. The facts alleged, and upon which the suit is founded, are, in substance, that prior to the injuries complained of the appellant rented to appellee that portion of the building situated in the city of Dallas, Tex., known as 2716 Elm street; that it was understood and agreed that the building would be occupied and used by appellee both as a residence and a place of business, and that appellant would repair and keep the same in a reasonably safe condition for appellee's use; that the floor of said building, at the time appellee rented it, was rot-

ten and defective in places, and such place covered and concealed by linoleum, all of which was unknown to appellee; that appellant and his agents negligently failed to repair and make said building reasonably safe for appellee's use; that on or about the 23d day of November, 1916, while appellee was occupying the said building under the terms of the rental contract with appellant, and while she was walking on the floor thereof in the usual and customary way, a plank in the floor broke, and that her leg went through the floor, inflicting injuries upon her of a serious and permanent nature. Appellee further alleged that appellant and his agents, in partial compliance with appellant's contract to repair, removed certain of the rotten planks of the floor of said building, and placed new planks therein, but left in said floor certain rotten planks, covered with linoleum and concealed from appellee, without notifying appellee thereof or of the dangerous condition of the floor; that appellant and his agents knew, or in the exercise of ordinary care should have known, that the rotten planks remained under the linoleum in a position where appellee would step upon the same, and knew, or should have known, that appellee would probably step upon said rotten planks, and that if stepped upon the same would break through with her and injure her; that said rotten, dangerous, and defective condition of the floor was known to the appellant and his agents long prior to the time the appellee was injured, and was concealed from appellee by the linoleum placed thereon by the appellant. The defenses were a general and special demurrer, a general denial, a special denial of making any contract to put and keep the building in question in a condition of good repair; denial of any knowledge on the part of appellant of any defect in the floor; and a plea of contributory negligence. The demurrers were overruled, and upon the conclusion of the evidence the appellant requested the court to instruct the jury, which had been impaneled to try the case, to return a verdict in his favor. This request was refused, and the case submitted upon certain special issues, over objections urged thereto by the appellant, and upon the answers of the jury to such issues judgment was rendered in favor of the appellee for the sum of $3,750.

On the 1st day of May, 1916, the appellant by verbal contract rented the building to appellee from month to month at a monthly rental of $15 per month, payable in advance. The appellee paid the rent for the month of May, 1916; took possession of the building on the 2d day of May, 1916, appellant retaining no control over the same. The testimony of both the appellant and appellee shows that appellant, at the time of the renting of the demised premises to appellee, agreed to repair the premises, and especially the floor thereof; that the renting was from month to month, at a monthly rental of $15, payable in advance. Appellant said:

"I told King to go in there and fix up everything that was needed. I did not know myself what was needed; I told her (appellee) I would repair what was necessary. I meant to have a good floor in that house at that time. I intrusted the repairs to Mr. King."

The appellee, Mrs. Perry, testified that she didn't know the floor of the house was in bad condition at the time she rented the premises; that appellant told her the floor was "kind of bad," and promised to fix the floor right away, before she moved in. She further testified that, following the conversation in which appellant said he would fix up the floor for her, she paid him the rent of $15 for the first month; that the rent was $15 a month, payable in advance; that she rented the place, and moved in on the 2d day of May, the next day after she rented; that she was going to follow the business of cleaning and blocking hats there, also selling ladies' hats and clothes, secondhand goods; that she also had her living equipment there, and wanted to live in the house. She further testified:

"I rented from Mr. Pollack by the month; I didn't rent for six months or a year or two years; just rented from him by the month, and at the end of every month I started a new month."

It is undisputed that appellee remained in possession of the house until after she was injured, paying rent from month to month, without any express renewal of the original rental contract, and without any complaint or notice to appellant of any defect in the floor of the building until about the 2d of November, 1916. L. E. King was sent by appellant to make the repairs agreed to be made on the 2d day of May, 1916. While he was at work making the repairs the appellee began to move in. King testified, in substance, that the rented building was about 12 feet wide and 70 feet long; that there was a brick wall with a door in it that separated the front room from the back room; that he noticed the flooring in the front room looked bad and needed fixing, and that it was in this room he made the most of the repairs; that he did not "relay the entire floor—relayed it just in spots"; that the appellee was present a part of the time while he was repairing the floor—just in and out—but that he did not know whether she saw the particular place that broke through with her or not; that occasionally he would ask her to step over and see if a certain part of the floor was all right, and that she would do it, and say, "Yes." This witness further testified that pieces of linoleum were laid over the floor, and that when he went to repair the floor in May the appellee told him to leave it on the floor; that he nailed some planks at the end of the hole made by appel-

lee's foot going through the floor, and put in a plank right by the side of the floor plank that broke and gave way with appellee's weight; that he thought he tested the plank that broke because he was working right on it, and if it had been bad then it would have broken through with him. Being shown a piece of the plank that broke with appellee, he said it was rotten; that he didn't know what kind of rot it was, but that it looked like it was caused by moisture; that it may have been a wet rot and dried out afterwards, but that it was then dry; that there wasn't any well of water under the house, and there wasn't any sewer or hydrant there that would expose the plank to water; that he thought the place where the plank gave way was dry and that he guessed he would term it a dry rot; that appellant in telling him to repair the floor meant that if he found a rotten plank in it to put in a new plank. He further said that since his memory had been refreshed from his deposition that it was his judgment, as a practical woodworker, that the piece of plank that came out of that hole in November was in practically that same condition in May, the time he did the repair work; that from his judgment as a carpenter the piece of board that came out of the hole, to look at it, would not be safe; that he would pronounce the board unsafe; that if he were instructed to remove all defective planks from the floor of a house, and should find a plank of that kind, he would remove it; that he could tell by hitting a plank like that with a hammer whether it was rotten or sound—could tell it was unsound. On redirect examination he said that if the plank was that rotten when he did the repair work he would have noticed it; that there was no doubt in his mind but that if the plank had been that rotten he would have seen it, and that he did not see how he could have put a new plank up against the plank that broke without noticing that it was rotten, if rotten, unless it was an oversight; that the only explanation he had for it was that he just overlooked it.

The appellant did not witness the accident and knows nothing of his own knowledge of how it occurred. The appellee, Mrs. Perry, testified, in effect, that when she moved into the house there were some men there at work; that there was then linoleum on the floor, and the floor was pretty well covered up; that she continued to occupy the house, and was hurt on the 23d day of November, 1916; that the linoleum was tacked down to the floor and belonged to appellant; that she did not go to see what the men who were then at work when she moved into the house were doing, and did not know whether they repaired the floor or not; that she never took the linoleum up, and never moved it, even to sweep the floor. Appellee further testified that on the day she was hurt a man came in to buy something; that she hurriedly went towards the front of the building to meet him, but before she got to him a plank in the floor broke, and her foot and leg went through the opening, and resulted in the injuries substantially as alleged in her petition; that the place in the floor that gave way with her had been "bending down" with her since about the 2d day of November, 1916, at which date she first noticed the defect; that on the 8th day of November, 1916, Sam Pollack, son of the appellant, came to collect the rent, and she told him about that "bent place" in the floor; that she said to him, "Mr. Sam Pollack, you see that bent place right there; it looks bad;" and that he replied, "Yes, Mrs. Perry, it looks bad; I will send some one to-morrow to repair it." That she then paid the rent, and later, about the 9th, 10th, or 11th day of November, 1916, she told appellant himself about the "bend" in the floor, and he then promised to have it fixed; that she meant by the floor "bending," a giving way, just a weak place; that when she told Sam Pollack and appellant about this condition of the floor there was no hole there, just a swaying down of the plank. She further said that at the time she went forward to meet the supposed customer and got hurt by the plank in the floor breaking she was not thinking about the "bending place" in the floor; that there was nothing on her mind but the sale she was going to make, and did not notice the place and put her foot on it, and her left foot and leg went through the floor up to the knee; that she had put a hat rack over the sunken place in the floor, and tried to keep it there, but that some one, without her knowledge, removed it; that her foot went through the linoleum first, and then through the hole made in the floor by the breaking of the plank; "that at the time she was injured anybody coming into her store could see the sunken place in the floor; that you did not have to step on it to notice it; that the linoleum had sunk down at that place, and if you paid any attention to it when you were walking you could see the place, but that if you didn't you would not see it." Appellee further testified that she went into appellant's store the day before she was hurt to buy some glue, and said, "Mr. Pollack, when are you going to send somebody to fix that floor?" and he replied, "To-morrow." In this connection appellant testified that the first time he knew there was anything the matter with the floor was on November 22, 1916; that on that date appellee came into his store, and said there was a hole in the floor, and that if he did not fix it she would sue him, and that he told her he would fix it to-morrow.

The appellant contends that the trial court erred in refusing to instruct a verdict in his favor for the following reasons: First, because the uncontroverted evidence showed that the renting of the premises in question

was from month to month; that whatever contract appellant made to repair the premises was made when the same was first rented to appellee, and expired at the end of the first month; that the injury for which appellee sues occurred in the month of November, 1916, and the evidence is undisputed that in the renting of the premises for the month of November, 1916, there was no covenant to repair, and no proof of any act of negligence on the part of appellant or his agents during that month that resulted in appellee's injuries. Second, because the evidence was undisputed that no repair work of any character was done by appellant or any of his agents upon the premises (except after the injury to appellee) after the repair work done about the 1st of May, 1916, and consequently there was in the case no act of the appellant or any of his agents upon which negligence could be charged during any of the monthly terms of appellee's occupancy after the first month and up to the injury of appellee. Third, because the undisputed evidence showed that appellee discovered a weak place in the floor long prior to the date of her injuries, and on the morning injured she had forgotten about said weak place, and thoughtlessly stepped upon it; consequently appellee's injuries were proximately due to her own contributory negligence. Fourth, because the mere relation of landlord and tenant creates no obligation on the part of the landlord to repair the demised premises, and the undisputed evidence showed that for the month of November, 1916, the month in which appellee claims to have been injured, there was no contract or obligation on appellant's part to repair the premises, and no negligent act on his part, or of any of his agents, that resulted in injury to appellee.

[1, 2] There is quite a contrariety of opinions upon the most, if not all, of the questions presented in this appeal, and a reading of them tends rather to confuse than to enlighten. It is well settled at common law, however, that the landlord is under no obligation, in the absence of a covenant to that effect, to repair the demised premises, even when they become defective through decay or deterioration, and the greater number of decided cases support the view that a landlord's covenant to repair will not support an action for personal injuries due to failure to make such repairs, since those injuries are deemed too remote to have been in contemplation of the parties when the covenant was given. It is said that in accordance with this view it is essential, in order to recover damages for personal injuries, that some act of negligence or misfeasance on the part of the landlord beyond the mere breach of covenant be shown. Likewise, the weight of authority is to the effect that for a breach of his covenant to repair the leased premises,

possession of which is in the tenant, the landlord cannot be held in tort for personal injuries received by the tenant as the result of the defect in the premises; that is to say, an action in tort cannot be based upon a breach of the contract itself. This is so because it is a cardinal principle of law that a mere breach of contract does not, in and of itself, constitute a tort. But while the general rule, which has been denied in some cases, is that an action ex delicto cannot be maintained to recover damages based upon a landlord's breach of covenant to repair, where the damages claimed are for personal injuries due to defects in the demised premises, when the landlord had agreed to repair, yet it has been held, which is in accord with our views, that an action will lie to recover for such injuries where based upon the negligent failure of the landlord to make repairs according to his contract. In such case the right of recovery does not depend or rest upon the breach of the covenant to repair, but upon the negligent failure of the landlord to perform a duty which he owes to his tenant amounting to a tort, and rendering him liable for injuries resulting therefrom. His liability does not rest upon contract, but upon negligence, the contract to repair being a mere matter of inducement, from which arises his affirmative duty to exercise care as to the condition of the leased premises, and, if his negligence in making or failing to make repairs results in an unsafe condition of the premises, he is liable for injuries caused thereby, unless the party injured was guilty of contributory negligence.

[3] In the case at bar the appellant agreed to repair the building rented to the appellee, and especially the floor of said building, which he testified was defective and in need of repairs at the time the rental contract was made. The renting was from month to month, each month constituting the beginning of a new term, and it is uncontroverted that appellant made repairs during the month of May, the first monthly term, and that appellee was not injured during that month, and not until the 23d day of November thereafter. Appellant insists that the covenant to repair ceased upon the expiration of the month of May, which was the first monthly period, and that as the accident occurred in the month of November, about five months thereafter, the rights and obligations of the parties are to be determined by the relation existing between them at that time, which he asserts was simply that of landlord and tenant. The answer to this contention is that, "when the landlord suffers the tenant to remain in possession after the expiration of the original tenancy, the law presumes the holding to be upon the terms of the original demise, subject to the same rent, and to all the covenants of the original lease, so far, at least, as they are applicable to the new conditions of

things." Taylor's Landlord and Tenant, vol. 2, § 525. In City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763, the Supreme Court of this state declared the rule to be that "the tenant who holds over with the consent of his landlord is deemed to be in possession upon the terms of his prior lease, upon the ground that the parties are presumed to have tacitly renewed the former agreement." See, also, Harthill v. Cooke's Ex'r (Ky.) 43 S. W. 705. The undisputed evidence in this case shows that the appellant suffered the appellee to remain in possession of the leased premises after the expiration of the original tenancy, and received from time to time the monthly rental originally agreed upon. Under the facts and the authorities cited, it must be presumed that appellee was in possession and holding during the month of November, 1916, the premises rented from appellant upon the terms of the original contract, and subject not only to the same rent, but to all the covenants of the original lease, including the covenant to repair.

[4] Our conclusion is that the great weight of authority denies the liability of the landlord for injuries from defects in the leased premises, the possession of which passes to the tenant, even when the landlord has covenanted to repair or to keep the premises in repair, except in cases where the landlord conceals a latent defect in the premises, or is guilty of some fraud or misrepresentation with reference thereto, or leases the property for some public use; and that since, in our opinion, the evidence fails to bring the case within either of these exceptions to the general rule, the appellee is not entitled to recover upon a mere breach of appellant's covenant to repair. The holding in Hart v. Coleman (Ala.) 78 South. 201, L. R. A. 1918E, 213, cited by appellee, to the effect that the landlord is liable ex contractu for personal injuries resulting to a tenant from his breach of an agreement to repair premises dangerously defective, is unquestionably in conflict with the great weight of authority, numerically at least, upon the subject.

[5] But we think the allegations of appellee's petition to the effect that appellant covenanted to repair the demised premises, and was guilty of negligence in failing to make the repairs agreed to be made, which negligence resulted in an unsafe condition of the premises, etc., stated a cause of action upon which appellee, under the evidence and findings of the jury, was entitled to recover. The jury, upon sufficient evidence, found that appellant at the time he rented the house in question to appellee agreed that he would repair the floor; that appellant failed to put the floor where appellee claims she was injured in a reasonably safe condition, but that

the same was left by appellant, or his agent, in an unsafe condition; that the appellant or his employés knew that the floor where appellee claims to have been injured was in such condition as that the same would be unsafe at the time of the letting of the premises; that appellee did not discover that the floor was as unsafe and dangerous, as the jury found it to be, before it gave way with her; and that appellee was not guilty of contributory negligence.

The evidence, as indicated in our statement of the facts, disclosed that appellant at the time he rented the premises to appellee knew that the floor was in bad condition, unsafe for appellee's use, and undertook to repair it through his employé, L. E. King; that King only partially repaired the floor by taking out rotten planks in certain places and replacing them with new planks; that he took out a rotten plank next to the one that broke and caused appellee's injuries; that the plank that broke with appellee's weight was, at the time King made the repairs, rotten and unsafe. The testimony, and especially that of King himself, justifies the further conclusion of the jury that he, at the time he made the repairs, which was at the time of the letting of the premises, knew of the decayed and dangerous condition of the plank causing appellee's injuries, and failed to remove and replace it with a sound and safe plank. The rule seems to be established by high authority that if the negligence of the landlord, his agents or employés, in failing to make the repairs agreed upon, results in an unsafe condition of the premises, he is liable for injuries caused thereby to the tenant in the absence of contributory negligence on the part of the tenant. 24 Cyc. p. 1127, under "Failure to Repair," and cases cited in note; Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289; Robinson v. Heil, 128 Md. 645, 98 Atl. 195; Thompson v. Clemens, 96 Md. 196, 53 Atl. 919, 60 L. R. A. 580; Pinkerton v. Slocomb, 126 Md. 665, 95 Atl. 965.

[6] The case of Wilcox v. Hines, 100 Tenn. 538, 46 S. W. 297, 41 L. R. A. 278, 66 Am. St. Rep. 770, holds that the landlord is liable not only if he has actual knowledge but also if, by the exercise of reasonable care and diligence, he could have such knowledge; but we need not stop to inquire whether or not this holding is correct, as we think the appellant, under the evidence and findings of the jury, must be charged with actual knowledge of the defect in the rented premises that causes the appellee's injuries. The knowledge of appellant's servant, L. E. King, must be imputed to appellant, and the effect of the jury's finding is that King, who, at the instance of appellant undertook to repair the floor of the demised premises, knew at the time of the renting of the premises

that the plank which broke and caused her injuries was rotten and unsafe, and that such condition was unknown to appellee.

[7] The appellee testified that at the time she rented the premises appellant told her the floor was "kind of bad," and it conclusively appears that the agent, King, immediately went to the premises and was at work there repairing the floor when appellee moved in; that King had full opportunity to see the condition of the plank, and to ascertain whether or not it was sound and safe for appellee's use. In his deposition, among other things, he said: "I was up there to find out the condition of the floor, which I did." In testifying as a witness on the trial he said that he put in a plank by the side of the one that subsequently broke through with appellee; that he tested that plank; that he had a hammer in his hand, and was working right on it, and sounded it. It is true he said he did not then know that the plank was rotten, but he further testified that since his memory had been refreshed by his deposition that it was his judgment, as a practical woodworker, that the piece of plank that broke with appellee in November was in practically the same condition in May that it was in when the accident in question occurred. The conclusion, we think, cannot be escaped that the testimony warranted the jury in finding that appellant and his agent, King, actually knew the condition of the plank that gave way and caused appellee's injuries at the time appellee took possession of the rented premises, and that appellant's liability in this case must be considered from the standpoint of actual knowledge on his part of the defective condition of said premises at such time. Brown v. Griffin, 71 Tex. 654, 9 S. W. 546. In the case here cited the Supreme Court held that it was not error for the trial court to instruct upon the duty of care on the part of those operating a railroad train if a person is seen in danger from the train, where the engineer testified that he had not seen such person on the track, there being circumstances in evidence from which the jury may have discredited that statement of the engineer. The court said:

"It is claimed that there was no evidence to warrant this charge. Upon the theory that the jury were bound to believe the fireman, who swore that he did not see plaintiff, this may be true. But the proof is that he was upon the engine operating it, and that there was nothing in front of it to obstruct his view of the track. The jury might have presumed from this that he did see the plaintiff. Is the court bound to assume that this presumption is wholly destroyed because a witness swore to the contrary? It may be that the weight of the evidence is clearly against the theory that the fireman saw the plaintiff, yet we cannot say that the proposition presented was so manifestly with-out evidence that it was calculated to mislead the jury."

Upon the whole, the testimony was amply sufficient to take the case to the jury upon the questions as to the agreement to repair the demised premises and as to the negligent failure on the part of appellant to perform the agreement. It was also sufficient to show negligence on the part of the appellant beyond a mere breach of the contract to repair, and that such negligence was the cause of appellee's injuries. The fact that no repair work was done in the month of November, the month in which appellee was injured, is immaterial. The contract to repair was made at the time of the letting of the premises; the renting was from month to month; the appellee continued to occupy the premises under said contract with the consent of the appellant, and the obligation to repair did not expire at the end of the first month. The injury to appellee did not result from defective material used in making the repairs that were made in the month of May, nor from improper or unskillful workmanship in making said repairs, but from the negligent failure of the appellant, as alleged by appellee, to remove and replace the rotten plank in the floor with a sound and safe one. The authorities we have cited sustain the proposition that a landlord is liable as well for the negligent failure to make the repairs which he has agreed to make as for the negligent construction of them.

[8] Was the appellee guilty of contributory negligence barring a recovery? The jury has found she was not, and we are not prepared to say the finding is without evidence to support it. We are aware that it is a general rule that where a tenant has knowledge of the defective condition of the leased premises, and continues thereafter to use and occupy the same, he is presumed to assume the risk, and in case of injury resulting from such defects he is held to be guilty of contributory negligence, and hence cannot recover. But we do not believe it can be safely said that the undisputed evidence in the present case shows that the appellee had such knowledge of the defect in the floor of the building leased and occupied by her as would authorize the court to declare, as a matter of law, she was guilty of contributory negligence. The appellant's answer specifically charged that the appellee was guilty of contributory negligence in that, if she fell into any hole in the leased building as alleged by her and suffered any injury on account thereof, said hole and its location was open, apparent, and obvious, and was known to appellee long prior to its being known to appellant, and that, if appellee fell therein, she did so negligently and

carelessly. The evidence shows that appellee knew for probably two or three weeks before the accident resulting in her injuries that there was a sag or sunken place in the floor where the plank broke as a result of her stepping upon it, but her testimony is to the effect that the floor, during the entire time she occupied the building, was covered with linoleum; that this linoleum belonged to the appellant, and was on the floor when she rented the premises and moved therein; that she did not see the repairs made by appellant's agent, King, and did not know anything about the character or extent thereof; that she did not see the floor under the linoleum at any time, and did not know anything about the decayed condition of the plank that broke or the cause of the sagging of the floor at that point. The evidence further shows that appellee called appellant's attention to the sunken place in the floor, and told him, on the day before the accident, if it was not repaired there might be a hole there in the future; but this evidently was mere conjecture on her part, and it does not appear that she knew the extent of the danger to which she was exposed by reason of the defective condition of the floor.

[9] Ordinarily, in an action against a lessor for injuries caused by the defective condition of the premises, the question whether a tenant has been guilty of contributory negligence is not a question of law, but a question of fact for the jury. The facts in the case at bar make applicable this rule. It has been held that the failure of the tenant to repair defects in the leased premises due to the negligence of the landlord, or his failure to remove from the premises, does not, as a matter of law, constitute contributory negligence on his part. Stevens v. Schweizer, 94 Misc. Rep. 646, 158 N. Y. Supp. 465. Likewise, it has been held that the use by a tenant of stairs known by him to be unsafe does not, as a matter of law, constitute contributory negligence.

[10] The well-established rule is that the circumstances of the case must be clear and decisive to justify its withdrawal from the consideration of the jury. The facts and circumstances of this case are not, in our opinion, of such character.

[11] The appellee was not entitled to recover upon the theory advanced by her that the defect in the floor was known to the appellant at the time of the renting, and was concealed by appellant from appellee. There is an entire lack of testimony to show, or tending to show, that appellant intentionally or consciously concealed the defective condition of the floor in question from the appellee. There is absolutely no proof that appellant made any false statement to appellee in regard to the condition of the floor, or intended, by leaving the linoleum on the floor or otherwise, to deceive her as to

its condition. As indicating there was no intention in fact to conceal the condition of the floor or deceive the appellee in regard thereto, we may refer to the undisputed testimony of L. E. King, in which he stated he asked the appellee if he should remove the linoleum, and she told him to leave it on the floor.

[12] There are assignments of error complaining of the court's action in submitting the special issues that were submitted. What we have already said disposes of the most of these assignments against appellant, and some are overruled on the ground that the issues submitted were immaterial and harmless, and their submission furnishes no ground for a reversal of the case.

[13] The eighth assignment complains of the submission of the following issue: "Did the plaintiff discover that the floor was as unsafe and dangerous as you have found it to be before it gave way with her?" To which the jury answered, "No." It is urged that the submission of this issue was error because it "assumed, as a matter of fact, that the jury would find that the floor was unsafe and dangerous." It may be admitted that the language of the special issue is subject to the criticism made; but we think the evidence conclusively shows that the floor was unsafe and dangerous before it gave way with appellee, and therefore the assumption furnishes no reason for reversing the case.

[14] It is further urged that the jury was made to understand by the language of the question "that, in the opinion of the court, appellee was not guilty of contributory negligence unless they found that she had discovered that the floor was unsafe and dangerous as they had found it before it gave way with her, and were thus led to answer the succeeding question, as to whether she was guilty of contributory negligence, in the negative." It is not believed that such was the effect of the question and the assignment will be overruled.

[15] The fourth special issue submitted to the jury was whether or not the unsafe condition of the floor of the demised premises was concealed from appellee. The jury answered that it was, and appellant, by his tenth assignment of error, urges that the jury's finding is without any evidence to support it, and that the trial court erred in not setting it aside and granting a new trial. We concur in this view of the evidence, and have heretofore in this opinion declared that the appellee was not entitled to recover on the theory advanced by appellee that the unsafe condition of the floor was concealed from her by the appellant. But since the appellee was entitled to recover, under the evidence and jury's findings, on the ground that appellant negligently failed to make the repairs which he agreed to make—that is, negligently failed to fully repair the floor

of the demised premises as he agreed to do —and appellee sustained the injuries complained of by her as a result of such negligence, the submission of the issue under consideration, and the court's refusal to set aside the jury's finding upon it, must be regarded as immaterial and harmless, and as entirely insufficient to justify a reversal of the case. The trial court would not have been authorized to set aside the jury's findings upon which appellee was entitled to judgment because of the error in submitting the issue in question.

[16] Appellant insists that the damages awarded by the jury ($3,750) are excessive, unwarranted by the evidence, and plainly the result of passion and prejudice on the part of the jury, and hence the court erred in not granting him a new trial. The record fails to disclose anything that shows or indicates that the jury was actuated by passion or prejudice or any improper motive in arriving at the amount of damages awarded appellee, and we would not be authorized, in view of the undisputed evidence, to say the award is excessive. The uncontradicted testimony is to the effect that appellee sustained injuries as a result of the negligence alleged that were serious and permanent, unless she submitted to a dangerous operation. Dr. Clay testified that, upon examination of appellee, he found the womb "retroflected back against the sacrum, back against the back," and she was complaining of trouble with the bladder; that retroflection of the womb is painful; that appellee suffered with both the right and left side, but more with the left than the right side; that she menstruated twice a month, and suffered a great deal with her left ovary; that in order to get the womb "out of the back" it would be necessary to shorten the ligaments, and fasten them to the posterior surface of the womb, and that it would be necessary to expand the womb; that in order to put the womb back in place it would be necessary for appellee to go to a hospital, take an anesthetic, and by an incision open the abdomen; that such an operation is classed as a major operation, and more dangerous to life than a minor operation. The witness further stated that if appellee was not operated on she would always have pain, and that the pain would be greater as she approached the "change of life." It is true that appellee testified she followed the "barber business," and that she shaved "more than ten men a day, more than twenty men a day"; but she further testified that she had not been able to do that kind of work since she received the injuries complained of without pain; that she was compelled to remain in bed as result of her injuries one month and ten days; that she was suffering pain from the injuries at the date of the trial; and that, when standing around a barber chair shaving customers, she suffers at times very much pain.

The judgment is affirmed.