**ROUNTREE et al. v. BRIDWELL et al.**

No. 12706.

Court of Civil Appeals of Texas.

San Antonio.

June 9, 1954.

Rehearing Denied June 30, 1954.

J. G. Rountree, Sr., Beeville, for appellants.

Kilgore & Kilgore, Dallas, Blades, Kennerly & Whitworth, Houston, for appellees.

NORVELL, Justice.

The court below rendered a summary judgment in favor of defendants, J. S. Bridwell, Bridwell Oil Company (a partnership composed of J. S. Bridwell and Margaret Bridwell Bowdle) and Houston Pipe Line Company. The parties will be designated as in the trial court. The plaintiffs, J. G. Rountree, Sr., Adele Rountree, a single woman, and J. G. Rountree, Jr., joined by his wife, Jessie Rountree, bring the case here and submit their appeal upon ten points of error, which assert that the oil and gas lease involved was indefinite and uncertain and hence void under the provisions of the statute of frauds; that by reason of such uncertainty of provision and the "methods" (so designated by plaintiffs) involved in developing the lease and marketing the gas produced therefrom, injury has resulted to plaintiffs and therefore the lease should be cancelled and damages awarded, and that the trial court erred in

not considering certain affidavits attached to plaintiffs' motion for new trial.

As indicated, the primary purpose of this suit was to cancel an oil, gas and mineral lease executed by plaintiffs as lessors and J. S. Bridwell, as lessee, on March 21, 1950, covering 477 acres of land in Bee County, Texas. Gas is now being produced under the lease and the clause particularly under attack relates to the gas royalty payments to be made to lessors. Plaintiffs say the provision is so indefinite and uncertain that it renders the entire lease ineffective and void. As to gas royalties, the lease provides that, "The lessee shall pay lessor, as royalty, one eighth (⅛) of the net proceeds derived from the sale of gas from each well, where gas only is found, while the same is being sold or used off the premises, * * *."

After gas was discovered upon the premises, the J. S. Bridwell Oil Company, as holder of the lease, entered into a rather detailed sales agreement with appellee Houston Pipe Line Company.

It is made to appear by proper affidavits supporting the motion for summary judgment, that the gas well and lands covered by the lease here involved lie within the Sliva Field in Bee County, and that in September of 1950, at the time the gas purchase agreement was executed, the Railroad Commission had not made a determination of the average temperature for the Sliva Field, as required by the Texas Standard Gas Measurement Law of 1949, Acts 51st Leg., p. 945, ch. 519, Article 6066b, § 4a, Vernon's Ann.Civ.St. The contractual bases for the measurement of gas purchased and to be delivered under the contract were set at a base pressure of two pounds above an assumed atmospheric pressure of 14.7 pounds to the square inch, an assumed standard base and flowing temperature of 60° Fahrenheit, and an assumed standard base and flowing gravity of six-tenths. It was likewise assumed that the gas would follow Boyle's law, namely, that "when gas is subjected to compression, and kept at a constant temperature, the product of the pressure and volume is a constant quantity, i.e., the volume is inversely proportioned to the pressure." Webster's New International Dictionary.

The term of the contract was ten years and the price to be paid for the gas was five cents per thousand cubic feet for the first five years and six cents for the last five years of the contract. Because it was necessary to construct a feeder line to the Rountree well, the agreement was specially amended so as to provide that, "In consideration of the construction by Buyer of said pipe line gathering system at the cost and risk of Buyer, as provided in Article I, above, the price for all gas purchased hereunder, as set forth above, shall be reduced by one cent (1¢) per one thousand (1000) cubic feet until total quantity of gas purchased and delivered hereunder shall have reached a total quantity equal to one thousand (1000) cubic feet of gas for each one cent (1¢) of intangible cost incurred by Buyer in the construction and laying of said pipe line gathering system, as reflected by the statement provided above."

The intangible cost referred to was defined as being the cost of constructing and buying the line excluding "any and all items of costs and expenditure which can be entirely or partially recovered by (the pipe line company) by salvage operations." It does not appear by proper affidavit filed on plaintiffs' behalf or otherwise, that improper charges were made under this provision of the agreement, nor that there were facts or circumstances connected with it which would render it unfair, improper or ineffective.

As to the Standard Gas Measurement Law, the contract specifically provided that, "Buyer (the pipe line company) agrees that the volume of gas, as above measured (two pounds per square inch above 14.7 pounds, etc.) shall also be corrected and reported in terms of a standard cubic part of gas as defined in and as required by House Bill 159, popularly known as the "Standard Gas Measurement Law."

Although plaintiffs were not a party to the agreement between Bridwell Oil Com-

pany and Houston Pipe Line Company it appears that they signed a division order in accordance with the gas purchase contract, and as a result the pipe line company paid over to them their one-eighth of the net proceeds direct, until such time as plaintiffs refused to accept the tendered royalty checks.

From defendants' supporting affidavits, it appears that the gas measuring provisions of the sales contract here involved were similar to those generally in use in the Sliva Field and that as soon as the necessary information was available, the quantum of gas received at the pipe line was reported in standard cubic feet in accordance with the provisions of the "Standard Gas Measurement Law," as well as in accordance with the bases set forth in the contract.

■■ The mere fact that in marketing the gas discovered upon the Rountree property, it was necessary for Bridwell to make numerous agreements as to the construction of feeder lines, measurement of gas, etc., does not render the lease void for uncertainty. The nature of natural gas and the problems of its transportation and measurement often require highly technical procedures and give rise to complicated accounting problems, but the lease is not thereby rendered ineffective and nugatory.

We hold that the lease here involved is not indefinite nor uncertain. It complies with the statute of frauds and is binding upon the parties.

■ We have set forth the essential facts disclosed by defendants' uncontradicted affidavits as to the "methods" of operation under the lease relating to the marketing of the gas produced. In view of these affidavits, it was incumbent upon appellees to contradict the same or show that they were not in a position to do so. This was not done and the court was justified in accepting the statements therein contained as true and acting accordingly. Rolfe v. Swearingen, Tex.Civ.App., 241 S.W.2d 236. The pertinent record shows no ground for cancellation of the lease by reason of the so-called "methods" used in developing the same, and further discloses no basis for a claim of damages.

■ The trial judge did not abuse his discretion in refusing to consider the affidavits tendered as exhibits to plaintiffs' motion for new trial. These affidavits should have been filed prior to the hearing upon the motion for summary judgment. Further, it does not appear that a consideration of such affidavits would affect the disposition of the case.

Having examined all of appellants' points and being of the opinion that none of them discloses a reversible error, the judgment appealed from is affirmed.