M. A. SHAW, Appellant,

v.

Harry M. FRANK et al., Appellees.

No. 5290.

Court of Civil Appeals of Texas.

El Paso.

Feb. 11, 1959.

Thompson, Knight, Wright & Simmons, Pat S. Holloway, Dallas, for appellant.

Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill, Midland, Scott, Hulse,

Marshall & Feuille, J. F. Hulse, El Paso, for appellees.

LANGDON, Chief Justice.

This is an appeal from a judgment granting plaintiffs' motion for summary judgment under Rule 166–A, Texas Rules of Civil Procedure. Appellees, Harry M. Frank and H & I Investments, Ltd., plaintiffs below, brought this suit against O. W. Henderson and appellant, M. A. Shaw, defendants below. Appellees' pleadings were in three counts. In Count I, judgment was sought against O. W. Henderson and appellant, M. A. Shaw, for title and possession of an undivided ⅜ths interest in the oil and gas leasehold estate and interest of lessee in the NE/4 of Section 47, Block 37, Township 3 South, T. & P. Ry. Co. Survey, Midland County, Texas. In Count II, judgment was sought against appellant, M. A. Shaw, to quiet title and to remove cloud from title and for damages for slander of title of the interest of appellees in the oil and gas leasehold estate described in Count I. In Count III, judgment was sought by appellee Harry M. Frank, only, against defendant O. W. Henderson (who had accepted service and entered his appearance in said cause, but made no other answer in these proceedings) on a liquidated claim for certain advances and indebtedness due by the said O. W. Henderson to appellee Harry M. Frank for costs, expenses and advances incurred in the drilling, completing, equipping and operating of certain oil and gas leases under the terms and conditions of a certain joint operating agreement wherein Harry M. Frank was designated "Operator", and H & I Investments, Ltd., together with defendant below O. W. Henderson, were designated "Non-operator"; and for judgment foreclosing as to defendant O. W. Henderson, and appellant M. A. Shaw, the operator's lien of appellee Harry M. Frank, provided for in the operating agreement above mentioned.

Appellees filed their motion for summary judgment asking all the relief prayed for, except as to the amount of damages alleged in their petition, and moved the court to sever and separately determine the damage issue.

Appellant presented his appeal upon the statement that the court erred in rendering summary judgment in behalf of appellees. Appellant plead that under date of August 9, 1955, Amerada Petroleum Corporation, the owner of certain oil and gas leases covering lands in Glasscock and Midland counties, Texas, entered into a written agreement with appellee Frank, under the terms of which Amerada Petroleum Corporation obligated itself to assign such leases to appellee Frank upon the drilling by him of certain wells on such leases as set forth in such agreement. The agreement referred to by appellant Shaw is what is commonly called, in the oil industry, a farm-out letter. The letter was not under seal, it bore no acknowledgments, and was not subject to recordation. It was accepted by appellee Frank, August 12, 1955. Among the leases covered by the Amerada farm-out agreement was the lease from George C. Fraser et al., dated October 24, 1950, covering the NE/4 of Section 47, Block 37, Township 3 South, on which the well known as the TXLA–1 well was subsequently completed. The farm-out agreement provided for the commencement of a well before a designated date, with subsequent wells to be commenced at stated intervals, and a provision, "This agreement is not assignable, except upon the written consent of our company." At about the same time appellee Frank obtained the farm-out letter from Amerada Petroleum Corporation, he entered into similar farm-out agreements with other lease owners covering the leases in Midland and Glasscock counties, Texas, involved in this suit. Frank proceeded to drill the wells called for in the respective farm-out agreements and, by September 29, 1955, had earned the right to receive assignments of three of the seven oil and gas leasehold estates covering the respective tracts of land upon which wells had been completed, in accordance with the terms of

the farm-out agreements. By an instrument dated September 29, 1955, appellee Frank assigned to O. W. Henderson and to H & I Investments, Ltd., in equal undivided interests of one-third each, rights acquired under the various farm-out letters, subject to certain terms and conditions therein enumerated and set forth, including the following:

"5. This assignment is further subject to the terms of a certain joint operating agreement, between the parties hereto, including specifically the operator's lien provided for therein."

On September 29th, contemporaneously with the execution of the above-mentioned instrument, which we shall refer to as an "assignment", appellee Frank, H & I Investments, Ltd., and O. W. Henderson executed and acknowledged the joint operating agreement dated September 8, 1955, describing and referring to the same oil and gas leases, providing that they are "subject to certain farm-out letters and agreements from Amerada Petroleum Corporation, Ashland Oil and Refining Company, and Edwin A. Pauley", and provided for a method of handling the joint expenditures for development of the leases and wells, and for a lien in favor of Harry M. Frank to secure him for advances made in that connection.

On January 10, 1956, appellant Shaw filed suit against O. W. Henderson in the District Court of Dallas County, Texas, on a promissory note in the amount of $23,500. On the same day, appellant caused a writ of attachment to be issued out of the District Court of Dallas County, Texas, which was levied on the properties involved in this suit.

Appellees contend in their sworn pleadings that, in order to maintain in effect the rights under the Amerada farm-out agreement, and in order to earn the right to an assignment of the leasehold estate, it was necessary that a test well be drilled on the NE/4 of Section 47 within the time therein provided; that defendant O. W. Henderson was, on and prior to January 12, 1956, in arrears in his payment to the joint account as called for in the joint operating agreement, and that he was accorded the privilege of making his contribution to the cost and expense of drilling the TXLA–1 well, but was unable to make the necessary financial arrangements to obtain his share of the drilling costs; that O. W. Henderson, to evidence his inability to carry on with the drilling, and to relieve himself of the liability and charges which would be placed on him in the event further drilling operations were carried on under the joint operating agreement, executed the instrument dated January 13th, under which he relinquished and re-assigned to appellees Frank and H & I Investments, Ltd., any rights which he had or might acquire in the NE/4 of said Section 47.

The TXLA–1 well was commenced on January 12, 1956, and was completed as a producing well on February 17, 1956. It is undisputed that neither defendant Henderson nor appellant Shaw contributed anything to the cost or expense of drilling this well.

Appellant urges that the writ of attachment which was levied on the interest of defendant Henderson in the TXLA–1 lease on January 13, constituted a valid attachment lien, and he further contends and offers his only controverting affidavit to show that the reassignment by Henderson of his interest in such lease to Frank and H & I Investments, Ltd., was not executed by him until January 14th. While clearly an issue of fact as to the date upon which such instrument was actually executed has been raised, it would not, unless material to an issue in this case, preclude the learned trial judge from rendering summary judgment for appellees in their suit from which the damage issue had been severed.

Appellant contends that defendant Henderson had such an interest in the TXLA–1 lease as was subject to attachment; that appellees are estopped from asserting that Henderson had no interest in such lease on

January 13, 1956; that appellant's attachment lien on the TXLA–1 lease is superior to the subsequently recorded deed from Henderson to appellees. Appellant urges that the trial court erred in granting summary judgment because there was a genuine issue of fact as to the date of the execution of the assignment from Henderson back to appellees.

None of the parties to this suit, as of the date of the levy of the writ of attachment—January 13, 1956—had any interest in the TXLA–1 lease as was subject to attachment. Whatever right appellee Frank had was acquired by him under the terms of, and subject to, the provisions of the farm-out letter from Amerada Petroleum Corporation. No interest was acquired by Frank in such lease until February 17, 1956, when the drilling of the well called for in the farm-out letter was completed. Frank acquired a mere contingent interest in such lease under the farm-out agreement, the condition or contingency being the commencement of the drilling of a well on said tract of land on or before a specified time and the completion of said well within forty-five days from the date of the actual commencement of drilling operations. The farm-out letter from Amerada and the acceptance thereof by Frank imposed no obligation upon Frank to drill a well on this tract, and conveyed no rights to Frank other than the right to enter upon the land for the purpose of drilling and completing the well called for. The assignment of an undivided one-third interest by Frank to Henderson in such lease could vest no greater interest in the TXLA–1 lease than Frank possessed. At most, Henderson acquired the right, under the assignment from Frank and under the terms and provisions of the joint operating agreement which was entered into at the same time, to participate in the cost and expense of drilling and completing the well on said tract called for by the farm-out letter from Amerada. It is undisputed that, prior to completion of the TXLA–1 well, Henderson elected, by the execution and delivery of the assignment back to appellees on January 13th or 14th, 1956, not to participate in the drilling and completion of the TXLA–1 well, the completion of such well being the only means by which he could acquire any interest in such lease.

While the terms of the joint operating agreement imposed, as between the parties thereto, a legally enforceable obligation on the part of Henderson to participate in the cost and expense of drilling and completing the wells drilled and to be drilled under the terms of such operating agreement, it is undisputed that Henderson never paid, offered to pay, or attempted to pay, anything at all on his part of the joint account for the drilling of any well under the Amerada farm-out, nor has appellant Shaw ever paid or offered to do so for him. It is also undisputed that Henderson was financially unable to carry his part of the burden of drilling the TXLA–1 well.

We conclude, therefore, that the interest, if any, held by defendant Henderson in the TXLA–1 lease on January 13, 1956, when the writ of attachment was levied, was not such an interest as was subject to execution under Article 288 of the Revised Civil Statutes of Texas, which provides:

"The writ of attachment may be levied upon such property, and none other, as is, or may be, by law subject to levy under the writ of execution."

The only interest that Henderson had was the right to participate in the drilling and completion of the TXLA–1 well. This he elected not to do, and it was not done or offered to be done by appellant Shaw.

Thus, in Moser v. Tucker, 87 Tex. 94, 26 S.W. 1044, 1045, the Supreme Court of Texas, speaking through Chief Justice Stayton, stated the rule as follows:

"It must be conceded that no property or interest in property is subject to sale under execution or like process unless the debtor, if sui juris, has power to pass title to such property or interest in

property by his own act. * * * There is no doubt that uncertain or contingent vested estates or rights in property may ordinarily be subjected to payment of debts through execution or like process; but, under sales so made, no greater or more certain interest can pass than might have been conferred by a conveyance made by the debtor, and whatever contingency would have defeated his right will have the same effect upon a person who holds by conveyance through him, however made."

█ It is well established, that not every interest in property a debtor may have a right to, or to acquire, may be subjected to sale under execution, or otherwise, for payment of his debts; for, in many instances, his right is so remote and contingent that it is deemed more likely to subserve the ends of justice, not so to subject it. Moser v. Tucker, 87 Tex. 94, 26 S.W. 1044; Chase v. York County Sav. Bank, 89 Tex. 316, 36 S.W. 406, 32 L.R.A. 785; Wilson v. Robertson, Tex.Civ.App., 223 S.W. 285.

In view of our holding that defendant Henderson did not have such an interest in the TXLA-1 lease as was subject to attachment, it becomes unnecessary to discuss appellant's second, third and fourth points of error.

█ Appellant Shaw finally urges error by the trial court in rendering summary judgment in favor of appellees insofar as such judgment foreclosed appellee Frank's operator's lien on Henderson's interest in all the leases involved herein, except the TXLA-1 lease.

The trial court had before it, for consideration and determination of the validity of such operator's lien, copies of the pertinent instruments; the assignment from appellee Frank to defendant Henderson, dated September 29, 1955, duly recorded in the Deed Records of Midland and Glasscock counties prior to the levy of the writ of attachment, and which contained the provision that such assignment was subject to the provisions of a joint operating agreement between the parties hereto, "including specifically the operator's lien provided for therein." The court below also had before it the joint operating agreement creating the operator's lien referred to in the assignment, together with the affidavit of Harry M. Frank supported by the sworn account of the itemized expenditures made in the drilling of the wells under the joint operating agreement for the joint account of the parties, as well as the sworn pleadings of the appellees in support of their motion for summary judgment.

In a proceeding under Rule 166-A, where facts are stated in sworn pleadings and affidavits by persons having direct knowledge of such facts and who are competent to testify, a denial of such facts in general terms, in unsworn pleadings, by the opposite party, does not raise a "genuine issue of a material fact." Affidavits opposing a motion for summary judgment must meet the requirements of Subsection (e) of Rule 166-A. More than a mere general denial is usually required.

The affidavit must set forth matter admissible in evidence to show the existence of a dispute as to the facts of a controlling issue. McDonald, Texas Civil Practice, Vol. 4, ¶ 17.26.

Under the circumstances, the appellant was required to come forward with more than a mere unsworn pleading, or suffer a summary judgment to be rendered against him.

We think this case comes clearly within the rule as expressed in the case of Rolfe v. Swearingen, Tex.Civ.App., 241 S.W.2d 236, and as stated in the case of Palm v. La Mantia Bros. Arrigo Company, Tex.Civ. App., 287 S.W.2d 208, 210, wherein it is said:

"In order to defeat appellee's motion for summary judgment, the appellant was under a duty to deny under oath any sworn statement presented by ap-

pellee which was untrue, and in the absence of such controverting statements or counter-affidavits, the trial court was justified in accepting the appellee's sworn statements as true and acting accordingly. Rountree v. Bridwell, Tex.Civ.App., 269 S.W.2d 824; Broussard v. Austin Road Co., Tex.Civ.App., 276 S.W.2d 912; Ward v. Stroud, Tex. Civ.App., 274 S.W.2d 136."

Finding no error, the judgment of the trial court is affirmed.