Mittie HARBISON et vir, Appellants,

v.

Vin L. JEFFREYS, Appellee.

No. 5488.

Court of Civil Appeals of Texas.

El Paso.

Dec. 6, 1961.

Warren Burnett, Odessa, Ed Keys, Monahans, for appellants.

McDonald, Shafer & Gilliland, Lucius D. Bunton, Odessa, for appellee.

LANGDON, Chief Justice.

This is an appeal from a summary judgment in favor of defendant growing out of a common law suit for damages brought by tenant (appellant herein) against her landlord (appellee herein), for personal injuries to, and the death of, the tenant's minor son, which allegedly resulted when a swing set, located on premises owned by appellee, collapsed and fell. The premises involved in this litigation consisted of four 60-foot lots making a rectangular tract of land 120 by 240 feet in size, on which were located eight small (1 and 2 bedroom) rental units, all of which were leased to various tenants, of whom appellant was one. The swing in question had been constructed and placed on the premises by another tenant for the use of such tenant's own children.

Appellant alleged that appellee owned and had under his control a number of ·rental units, which enclosed a common

area for the use of the tenants of the various units, and that appellee was negligent in placing a defective swing on the play area or common area, or permitting it to remain on the common area, the swing constituting a latent danger; that, in the alternative, appellee was negligent in leasing a portion of the common area which, at the time of leasing, contained a latent, hidden danger, and that such negligence was a proximate cause of appellant's damages.

On September 23, 1959, appellee filed his original answer in which he specially denied the allegations in appellant's petition and alleged that the swing belonged to and was the property of persons other than himself; that the swing was located upon property which had been leased to other tenants, and that the swing was the property of and belonged to the tenants occupying the premises upon which the swing was located. Appellee denied that he kept or maintained any swing, or any other equipment, as alleged by appellant, and that such swing was being used by appellant's deceased son without appellee's knowledge.

On January 15, 1960, depositions of appellant and appellee were taken. Thereafter, on March 24, 1960, appellee filed his motion for summary judgment and attached thereto (in addition to the depositions that were made a part of such motion by reference) the affidavit of one Annie M. Smith. On August 5, 1960, after due notice, and at a time more than four months subsequent to the filing of appellee's motion for summary judgment, a hearing was had thereon. Appellant filed no answer to appellee's motion prior to such hearing, nor did she file any controverting affidavits at any time. The court continued the hearing until August 22, 1960, at which time appellant filed an answer to appellee's motion, but filed no counter-affidavits. The court, having considered the pleadings on file, the depositions, and the affidavit, granted the motion for summary judgment, and it is

from this order that an appeal has been taken.

Appellant has based her appeal on four points, the first two of which are contentions that the trial court erred in granting appellee's motion for summary judgment because a genuine issue as to a material fact, other than the amount of damages, is presented, and because the trial court failed to resolve all doubts as to the existence of a genuine issue of a material fact against the movant appellee. Points 3 and 4 are based, first, on the contention that appellant's son was injured by hidden danger located on appellee's yard area which was under appellee's control; and, secondly, that a genuine issue as to a material fact is presented by the question, "If appellant's son was injured by a hidden danger located on appellee's yard area which was under the control of one of appellee's tenants, was said hidden danger thereon when said tenancy commenced, or when that portion of the premises was re-let?" It was appellant's contention that the depositions of the parties and the affidavit tendered by appellee in support of appellee's own motion are sufficient in and of themselves to raise the fact issues, and thus render it unnecessary for appellant to controvert the motion by filing opposing affidavits.

Appellant admittedly has filed no counter-affidavits or other sworn pleadings in opposition to appellee's motion. It is well settled, however, that if formal pleadings of the parties at the time of the determination of the motion fail to embrace all the material issues of fact, a summary judgment will not be justified; or, when the affidavits or other summary judgment evidence disclose facts which render the position of the moving party untenable, summary judgment should be denied, regardless of defects which may exist in the pleadings of the opposite party. Womack v. Allstate Insurance Co., 156 Tex. 467, 296 S.W.2d 233; 36 Texas Law Review 102; Kirk v. United States, 9 Cir., 232 F.2d 763. It is also equally clear

that one opposing a motion for summary judgment may not rely solely on the issues raised by the pleadings of the parties, for such issues, when raised only by the pleadings, generally are not sufficient to present a genuine issue as to a material fact such as would bar the rendition of a summary judgment when the only extrinsic evidence demonstrates the absence of any issue as to a material fact. The object of Rule 166–A, Texas Rules of Civil Procedure, is to permit the prompt disposition of just such cases, and to hold otherwise would effectually nullify the summary judgment practice.

The only extrinsic evidence before us here is that which was tendered by appellee in support of his motion. Therefore, if a genuine issue as to a material fact is presented in this case, it must be looked for in the depositions of the parties and in the affidavit of Mrs. Annie M. Smith.

Appellee testified by deposition, and his testimony is corroborated by the affidavit of Mrs. Annie M. Smith, that the swing in question was not the property of appellee and had not been placed on the premises by him, but that it belonged to the Smiths; that it had been made by Alvy Raymond Smith, the former husband of Annie M. Smith, for their two small daughters, out of pipe which Mr. Smith had brought in from the oil fields, and that it had been installed by Mr. Smith in their back yard on property which they rented. The Smiths had occupied the premises since 1952. Appellee did not acquire the property until 1953 or 1954; in any event, the Smiths were in possession when the property was purchased by appellee. The Smiths installed the swing some time after the property was acquired by appellee, and it had been on the premises three or four years when the accident occurred. Before the accident, Mr. and Mrs. Smith were separated; Mr. Smith moved away, but Mrs. Smith and her two daughters continued to live on the premises and were living there on the date appellant's son was injured.

Appellant contends that the entire area back of the several rental units was a common area for use of all the tenants and was not for the exclusive use of any tenant. The record reflects that none of the so-called "common area" was separately fenced; that part of the area was devoted to three clotheslines each of which was used in common by the tenants of two or more of the eight rental units. It also appears that appellee personally managed the rental of the various units, and kept the area back of the several houses clean. All buildings on the premises were rented except a small storehouse, referred to in the record as an old "Model T" garage, which appellant contends was located in the common area.

We do not believe that such evidence is sufficient to raise a genuine issue of fact as to whether the particular part of the premises on which the swing was located was a part of a common area for the use of all the tenants. The appellee, as well as his tenant, Mrs. Smith, testified that the swing was located on property which she rented. The fact that other portions of the property were used in common by all or part of the other tenants would not alter the character of the exclusive possession of that portion of the premises rented and occupied by Mrs. Smith.

The evidence that the swing belonged to the tenant, Mrs. Smith, that it was on property which she rented, and that it was kept and maintained thereon by such tenant, and not by the landlord, is, we think, uncontroverted. Neither Mrs. Smith nor her former husband, Alvy Raymond Smith, are parties to this suit; thus, the question of their liability, if any, to appellant is not an issue here. However, a tenant will generally be held liable to third parties for injuries resulting from a nuisance on the premises which is due to such tenant's own act or failure of duty. The swing was a mere chattel, kept and maintained by the tenant for the use of her own children, and there is

no evidence that the landlord had assumed the duty of keeping it in repair, or that he was under any duty to do so.

While it is true that the swing was placed on the premises by the former husband of Mrs. Smith at a time (during the continuance of their marital relations) when he was technically, as head of the household and manager of the community, in control of the demised premises, there is no question but that Mrs. Smith assumed exclusive possession and control over the swing after her husband left, and that she was in possession and control of the instrumentality (swing) on the date of the accident.

All of the evidence indicates that the swing was personalty and belonged to the tenant; that it had not become a part of the realty by being affixed to the ground upon which it stood. It simply stood on top of the grounds, and was not anchored or otherwise permanently affixed to the realty. Assuming, therefore, that appellant is correct in her assertion that the tenancy of Mr. and Mrs. Smith was interrupted when they separated or divorced, and that a re-letting of the premises occurred by reason of the continued possession and occupation of the premises by Mrs. Smith, alone, constituting the commencement of a new tenancy—still, we do not believe that a landlord, under such circumstances, is charged as a matter of law with a duty of inspecting and warning the tenant of defects, not only in demised premises, but of defects and hidden dangers in the personal property of such tenant as well, particularly where the tenant has never quit the premises and was in possession and control thereof when the new term commenced.

We have carefully examined each of the depositions, as well as the affidavit filed by appellee in support of his motion for summary judgment, and we have, as the trial court was required to do, resolved all doubts as to the existence of a genuine issue as to a material fact against the movant-appellee; and, like the trial court, have concluded that the extrinsic evidence before us fails to show the existence of a dispute as to the facts of a controlling issue.

Appellant elected not to file counter-affidavits in opposition to the sworn testimony and the affidavit tendered by appellee, but determined that she would rely solely upon the extrinsic evidence filed by appellee to raise material disputed issues of fact. Such practice is, at best, risky; and where the only evidence before the court fails to raise a genuine issue as to a material fact, such as is the case here, appellant was under a duty to come forward with more than a mere unsworn pleading, or suffer a summary judgment to be rendered against her.

In order to defeat appellee's motion for summary judgment, the appellant was under a duty to deny, under oath, any sworn statement presented by appellee which was untrue; and, in the absence of any such controverting statements or counter-affidavits, the trial court was justified in accepting the appellee's sworn statements as true, and in acting accordingly. Rolfe v. Swearingen, Tex.Civ.App., 241 S.W.2d 236; Palm v. La Mantia Bros. Arrigo Company, Tex.Civ.App., 287 S.W.2d 208; Rountree v. Bridwell, Tex.Civ.App., 269 S.W.2d 824; Ward v. Stroud, Tex.Civ. App., 274 S.W.2d 136; Shaw v. Frank, Tex. Civ.App., 334 S.W.2d 476.

We therefore overrule appellant's Points One and Two.

Appellant's third point is based on the contention that her son was injured by a hidden danger located on appellee's yard area *which was under appellee's control.* We think this point, too, must be overruled. In her affidavit, Mrs. Smith stated that the swing was on property which she rented. She had lived on the same premises long before the property was even purchased by appellee; she continued in possession after he acquired it; and we

believe she was competent to testify with respect to the identity of the property she rented. Under the circumstances, appellee having also testified by deposition that the swing was on property rented to Mrs. Smith, we think it must follow, as a matter of law, that at the time of the accident in question the property upon which the swing was located was under the control of Mrs. Smith, notwithstanding the fact that appellee performed yard work back of all the houses.

We think appellant's fourth point, which is based on the assumption that the swing was, in fact, located on premises owned by appellee, but which was under the control of one of appellee's tenants, must also be overruled. A determination of this point involves a question of law with respect to the duty of a landlord to inspect the premises for hidden dangers at the commencement of each new tenancy or re-letting of the premises. We do not believe that the duty to inspect extends, in any event, to an inspection of the chattels and personal effects of tenants holding over from month to month, or to situations where a husband and wife are divorced, and a re-letting of the premises results by reason of the wife's continued occupancy in her capacity as a feme sole.

In summing up, we believe the law in Texas with respect to the question of the liability of a landlord to a tenant is quite well settled. Generally, the cases hold that in order for a Texas court to affix liability upon a landlord for personal injury to his tenant, there must exist some type of contract or agreement between the landlord and his tenant, imposing a duty upon the landlord to keep the premises in repair, or a covenant to keep the premises in a reasonably safe condition; to hold the landlord liable to lessee the court must find that personal injury was contemplated by the parties for the negligent performance of the duties thereunder.

In the case before us, the swing was the personal property of another tenant, erected for the use of such other tenant's own children. The swing cannot be said to have constituted a nuisance per se, and though it may have constituted a latent danger by reason of some hidden defect in its construction, there is no showing that appellee was aware of such defect, or that he was under a duty to make such an inspection as might have disclosed it. Mrs. Smith was the owner of the swing, had swung in it herself. She said the swing seemed sturdy, and that she believed it to be safe enough for her own children and, to her knowledge, no one had ever been injured in the swing prior to the accident in question. The landlord (appellee) expressly denied that he maintained or controlled the swings in question or that he undertook to provide any playground or other equipment for the amusement of the children of any of his tenants.

As said in Ross v. Haner, 258 S.W. 1036 (Tex.Com.App.1924), a case in which the tenant's child had fallen from an unlatched window which the landlord had promised to repair, the court reasoned:

"Ordinarily a contract by a landlord to repair is made with a view to comfort and convenience only, and not for the purpose of protecting the tenant or a member of his family from some threatened personal injury. In such case no duty would be implied to use care for the protection against injury of this character."

Similar holdings are to be found in the following cases: Pollack v. Perry, 217 S.W. 967 (Tex.Civ.App.1920); Perez v. Raybaud, 76 Tex. 191, 13 S.W. 177, 7 L.R.A. 620.

Texas has no statutory provision respecting the obligation of a landlord to repair the premises and affixing liability for failure to repair. In the absence of such statute or an agreement, the tenant takes the premises in the condition that he finds them, and the landlord may be held liable for personal injuries to his tenant only if he knew of the hidden defect and

failed to disclose it to his tenant. Yarbrough v. Booher, 141 Tex. 420, 174 S.W. 2d 47, 150 A.L.R. 1369; Flynn v. Pan American Hotel Co., 143 Tex. 219, 183 S.W.2d 446; Morton v. Burton-Lingo Co., 136 Tex. 263, 150 S.W.2d 239; Fort Worth & D. C. Ry. Co. v. Mills, Tex.Civ.App., 140 S.W.2d 513.

Finding no error, the judgment of the trial court is affirmed.